LOCAL 589, AMALGAMATED TRANSIT UNION & others vs.
MASSACHUSETTS BAY TRANSPORTATION AUTHORITY.

Suffolk. March 7, 1984. — July 5, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Arbitration,* Authority of arbitrator, Judicial review. *Massachusetts Bay Transportation Authority,* Part-time employees, Collective bargaining.

This court did not consider whether an arbitrator should have been allowed to intervene in an action brought by a labor union seeking confirmation of an award made by the arbitrator, where the interests of the union and the arbitrator were identical and there was no indication that the union's advocacy of those interests was inadequate, where the trial judge had before him the arbitrator's opinion explaining his award, and where the arbitrator was allowed to file an amicus curiae brief before this court addressing the merits of the union's enforcement action. [409-410]

A claim by the Massachusetts Bay Transportation Authority that an arbitration award conflicted with the management rights granted to the Authority by G. L. c. 161A, § 19, raised a jurisdictional challenge to the award, and, thus, courts reviewing the award were not required to give deference to the arbitrator's interpretation of the statute. [410-411]

Provisions of an arbitration award purporting to regulate the employment practices of the Massachusetts Bay Transportation Authority in connection with its part-time employees dealt with matters of inherent management rights, specifically the right "to hire part-time employees," conferred on the Authority by statute, and thus were unenforceable as beyond the scope of the arbitrator's powers. [411-417]

Although portions of an arbitrator's award purporting to regulate the Massachusetts Bay Transportation Authority's employment practices in connection with its part-time employees were unenforceable as beyond the scope of the arbitrator's powers, this court concluded that severance of those provisions and enforcement of the remainder of the award would not lead to an injustice. [417-419]

CIVIL ACTION commenced in the Superior Court Department on February 15, 1983.

A motion for leave to intervene was heard by *Ronan, J.,* and the case was heard on motions for summary judgment by *Cashman, J.,* sitting under statutory authority.

The Supreme Judicial Court granted a request for direct appellate review.

*Douglas Taylor* of the District of Columbia (*John F. McMahon* with him) for the plaintiffs.

*Joseph H. Elcock* (*Carol A. Buckley* with him) for the defendant.

*Holly C. Laurent* (*Arthur L. Stevenson* with her) for James J. Healy, amicus curiae.

HENNESSEY, C.J. Local 589 of the Amalgamated Transit Union (union) is the recognized representative for certain maintenance and operating personnel of the Massachusetts Bay Transportation Authority (MBTA). The union filed an action in the Superior Court seeking to enforce the terms of an arbitration award issued in accordance with G. L. c. 161A, § 19G. The union alleged that the MBTA had refused to abide by four provisions of the award regarding part-time employees. The MBTA denied that it was bound by the contested provisions. The arbitrator who issued the award then sought to intervene in the union's action. The first appeal addressed in this case is the arbitrator's appeal from a ruling by a judge of the Superior Court denying his motion to intervene. The second appeal is by the union from a second judge's entry of summary judgment sustaining the MBTA's position. We find no merit in either appeal and affirm both orders.

The background of these appeals is not disputed and may be summarized briefly. A collective bargaining agreement between the union and the MBTA expired on December 31, 1980. In July of 1980, both parties began bargaining on the terms of a new agreement but were unsuccessful. Just prior to the expiration of the contract, in December, 1980, the Legislature enacted St. 1980, c. 581, amending the MBTA's enabling legislation. G. L. c. 161A. Section 8 of c. 581, codified at G. L. c. 161A, § 19, designated certain matters as inherent management rights and prohibited the board of directors of the MBTA from bargaining collectively with labor organizations representing its employees over any of them. In June, 1982, the

392 Mass. 407                                    409

Local 589, Amalgamated Transit Union *v.* Massachusetts Bay Transportation Authority.

union and the MBTA proceeded to interest arbitration pursuant to G. L. c. 161A, §§ 19C-19G. The arbitrator held hearings between August and November, 1982. On January 15, 1983, the arbitrator issued his opinion and award. The MBTA refused to abide by four provisions of the award regarding part-time employees, discussed in more detail *infra*. The union filed an action in the Superior Court pursuant to G. L. c. 161A, § 19G, and the arbitrator filed a motion to intervene. A judge of the Superior Court denied the motion to intervene. The union and the MBTA then both filed motions for summary judgment. A second judge entered a summary judgment declaring invalid the challenged provisions of the award, severing them from the remainder of the award, and enforcing the award as severed. The union appealed, and we allowed the union's application for direct appellate review.

I. THE ARBITRATOR'S MOTION TO INTERVENE.

The arbitrator sought to intervene in the union's action against the MBTA as a matter of right, pursuant to Mass. R. Civ. P. 24 (a), 365 Mass. 769 (1974), and alternatively, based on the motion judge's discretion, pursuant to Mass. R. Civ. P. 24 (b), 365 Mass. 769 (1974). The judge denied the motion on both grounds and the arbitrator appealed. -

While the denial of a motion to intervene by right, along with the denial of an accompanying request for permissive intervention, may be appealed immediately, *Attorney Gen.* v. *Brockton Agricultural Soc'y,* 390 Mass. 431, 433 (1983), *Mayflower Dev. Corp.* v. *Dennis,* 11 Mass. App. Ct. 630, 634-635 (1981), we need not reach the merits of the arbitrator's appeal.

The basis of the arbitrator's motion to intervene is G. L. c. 161A, § 19G. In relevant part G. L. c. 161A, § 19G, inserted by St. 1978, c. 405, § 2, provides that "[a]ny determination by the arbitrator . . . shall be binding upon the parties . . . and may be enforced at the insistence of either party or by the arbitrator in the superior court." The arbitrator contends that he has special position under this statute as a guardian of the public interest and therefore should be allowed to intervene. Even if the judge should have allowed him to intervene in the

proceedings, either by right or by discretion, we conclude the arbitrator was not prejudiced by the denial of his motion. The interests of the union and the arbitrator, as evidenced by the pleadings, are virtually identical, and the arbitrator made no allegation or showing that the union's advocacy of those interests was inadequate. In addition, the judge had before him the arbitrator's sixty-two page opinion explaining the award. Finally, the arbitrator was allowed to file an amicus curiae brief before this court addressing the merits of the union's enforcement action against the MBTA. We therefore dismiss the arbitrator's appeal.

II. THE UNION'S APPEAL OF THE ENTRY OF SUMMARY JUDGMENT.

The union contends that the trial judge erred in declaring unenforceable the challenged provisions of the award, severing these provisions, and enforcing the award without them. According to the union, the judge made three different errors. The union first argues that the judge failed properly to defer to the arbitrator's interpretation of the management rights portion of G. L. c. 161A, § 19. It next contends that the disputed provisions of the award do not impermissibly infringe upon the MBTA's inherent management rights under the statute. Finally, it argues that even if the challenged provisions are unenforceable, the judge erred in severing these provisions from the award instead of remanding the entire award to the arbitrator for reconsideration. We treat each argument separately.

*Standard of review.* The union contends that judicial review of the arbitrator's award is limited to whether it is supported by substantial evidence or is "utterly unreasonable." The arbitrator asserts that we should "Defer to the Arbitrator with Respect to the Interpretation and Application of the Relevant Statutory Provisions." In the context of the instant case, we reject both of these positions.

The MBTA makes a jurisdictional challenge. It claims that the contested portions of the arbitrator's award are unenforceable because they go beyond the arbitrator's authority. Whether an arbitrator has acted beyond the scope of authority conveyed

392 Mass. 407                                                    411

Local 589, Amalgamated Transit Union *v.* Massachusetts Bay Transportation Authority.

to him is always open to judicial review. See *School Comm. of Hanover* v. *Curry,* 369 Mass. 683, 685 (1976); *Trustees of the Boston & Me. Corp.* v. *Massachusetts Bay Transp. Auth.,* 363 Mass. 386, 390-391 (1973). An arbitrator exceeds his authority where his award requires conduct by a public employer beyond that to which the public employer may bind itself or allow itself to be bound. See *Watertown Firefighters, Local 1347* v. *Watertown,* 376 Mass. 706, 715 (1978); *School Comm. of Hanover* v. *Curry, supra.* In determining whether an arbitrator exceeded his authority in a provision of an arbitration award, judicial review of the award is independent. See *Boston Teachers Local 66* v. *School Comm. of Boston,* 386 Mass. 197, 212-213 (1982). Those portions of an arbitrator's award which exceed the arbitrator's authority are void and may be vacated by a court. See *id.*; *School Comm. of Braintree* v. *Raymond,* 369 Mass. 686, 690-691 (1976); *J.F. Fitzgerald Constr. Co.* v. *Southbridge Water Supply Co.,* 304 Mass. 130, 134 (1939). Accordingly, the judge was correct not to defer to the interpretation of the arbitrator in considering whether the challenged portions of the award are void because they extend to issues beyond the power of the arbitrator to consider or to bind the MBTA under G. L. c. 161A, §§ 19-19G. Similarly, we need not defer to the arbitrator in reviewing the judge's conclusions that the provisions did exceed the arbitrator's authority.

*Challenged provisions.* The challenged portions of the arbitrator's award all purport to restrict the MBTA's exercise of its discretion in connection with part-time employees: "A. The maximum number of part-time employees shall not exceed fifteen percent (15%) of the number of full-time employees in the classification. B. No full-time employee will lose his regular weekly pay because of a layoff while a part-time employee is actively employed in the same classification. C. Part-time employees shall not . . . work on Saturdays or Sundays. . . . L. All charters, vacation reliefs, and any regular runs left vacant because of the absence of regular full-time operators will be worked only by full-time operators." The judge agreed with the MBTA that these portions of the arbitrator's award were

unenforceable because they exceeded the arbitrator's ability to bind the MBTA under express provisions of G. L. c. 161A, § 19. The union contends that the judge erred in his determination. According to the union, the challenged provisions do not improperly restrict the MBTA's inherent management rights under G. L. c. 161A, § 19, and, therefore, do not extend beyond the arbitrator's authority as to wages, hours, and conditions of employment. We agree with the judge that the challenged provisions of the arbitrator's award are unenforceable as beyond the scope of the arbitrator's authority.

Whether an arbitrator has exceeded his authority by including provisions in an arbitration award depends upon what matters were properly before him for consideration. See *Watertown Firefighters, Local 1347* v. *Watertown, supra*; *Trustees of the Boston & Me. Corp.* v. *Massachusetts Bay Transp. Auth., supra* at 391. Cf. *J.F. Fitzgerald Constr. Co.* v. *Southbridge Water Supply Co., supra* at 135; *Conley* v. *Joyce,* 482 Pa. 263, 270-272 (1978). See generally Craver, The Judicial Enforcement of Public Sector Interest Arbitration, 21 B.C.L. Rev. 557 (1980). Here, the arbitrator acted pursuant to G. L. c. 161A, §§ 19-19G. Accordingly, whether the challenged provisions of the award are unenforceable as beyond the arbitrator's authority is a matter of legislative intent. Did the Legislature intend to allow the arbitrator to regulate the MBTA's conduct in connection with part-time employees in the way that the challenged provisions provide? To the extent that an arbitrator's award purports to regulate conduct beyond that which the framework of G. L. c. 161, §§ 19-19G allows, it contravenes legislative intent and cannot be enforced.

General Laws c. 161A, §§ 19-19G, contain two specific limitations on an arbitrator's authority to regulate the conduct of the MBTA. The first specifies those matters properly subject to arbitration. General Laws c. 161A, § 19G, states in relevant part that "[t]he scope of arbitration shall be limited to wages, hours, and conditions of employment . . . ." The second limits the means by which an arbitrator may fashion an award addressing wages, hours, and conditions of employment.  In G. L.

c. 161A, § 19F,[1] the Legislature withdrew from the scope of an arbitrator's consideration in fashioning an award matters of "inherent management right," as defined by G. L. c. 161A, § 19.[2] These "inherent management right[s]" are certain types

---

[1] General Laws c. 161A, § 19F, provides the considerations which are available to an arbitrator in framing his award. General Laws c. 161A, § 19F, par. 8, as appearing in St. 1980, c. 581, § 9, is a residual category of such considerations. It states that an arbitrator may consider, in addition to those matters specifically set forth in the statute, "[s]uch other factors, not confined to the foregoing, which are normally or traditionally taken into consideration in the determination of wages, hours and conditions of employment through voluntary collective bargaining, mediation, fact-finding, arbitration or otherwise between parties, in the public service of the commonwealth, and *which are not precluded from bargaining under section nineteen*" (emphasis added).

[2] General Laws c. 161A, § 19, as amended by St. 1980, c. 581, § 8, provides: "The directors shall have authority to bargain collectively with labor organizations representing employees of the authority and to enter into agreements, with such organizations relative to wages, salaries, hours, working conditions, health benefits, pensions and retirement allowances of such employees, provided, however, that the directors shall have no authority to bargain collectively and shall have no authority to enter into collective bargaining agreements with respect to matters of inherent management right which shall include the right:

"*(i)* to direct, appoint, employ, assign and promote officers, agents and employees and to determine the standards therefor.

"*(ii)* (A) to discharge and terminate employees subject to the provisions of such clauses (B) and (C).

"(B) No action set forth in (A) shall be sustained if, in a proceeding invoked in accordance with the provisions of such clause (C), the employee shall establish by a preponderance of the evidence that it was based upon race, color, religion, sex, age, national origin, handicapping condition, marital status, or political affiliation or activities or union activities or union organizing of the employees, a reprisal against the employee for disclosure of information by an employee which the employee reasonably believes evidences a violation of any law, rule or regulation or mismanagement, a gross waste of funds, or abuse of authority; a reprisal against any employee for the refusal of any person to engage in political activity.

"(C) The parties may include in any written agreement a grievance procedure culminating in final and binding arbitration which may be invoked in the event any employee of the authority is aggrieved by any action taken under such clause (A).

"*(iii)* to plan and determine the levels of service provided by the authority.

"*(iv)* to direct, supervise, control, and evaluate the departments, units, and programs of the authority; to classify the various positions of the authority and ascribe duties and standards of productivity therefor.

of employment-related issues which the Legislature has chosen to exclude from the collective bargaining process. "[T]he directors shall have no authority to bargain collectively and shall have no authority to enter into collective bargaining agreements with respect to matters of inherent management right." G. L. c. 161A, § 19. The primary inherent management right relevant to this appeal is the right "to hire part-time employees." G. L. c. 161A, § 19 (*viii*).

To the extent that the challenged provisions of the arbitration award contravene these limitations on the arbitrator's authority to regulate conduct of the MBTA they are unenforceable as extending beyond those matters the Legislature intended to put before the arbitrator. Accordingly, we must measure each provision against the statutory restrictions.

We are guided in our consideration of these restrictions by established principles of statutory construction. See *United States Jaycees* v. *Massachusetts Comm'n Against Discrimination,* 391 Mass. 594, 601 (1984). In determining whether the

"(*v*) to develop and determine levels of staffing and training.

"(*vi*) to determine whether goods or services should be made, leased, contracted for, or purchased on either a temporary or permanent basis.

"(*vii*) to assign and apportion overtime.

"(*viii*) to hire part-time employees.

"The authority is hereby prohibited from bargaining collectively or entering into any agreement to make pension benefits payments to its employees that are determined in a manner that includes the amount of overtime earnings of said employees.

"The authority is hereby prohibited from bargaining collectively or entering into a contract which provides for automatic cost-of-living salary adjustments which are based on changes in the Consumer Price Index or other similar adjustments unless specifically authorized by law. Except as provided in sections nineteen C to nineteen G, inclusive, the employees of the authority shall submit all grievances and disputes pursuant to arbitration provisions in agreement existing at the time of the creation of the authority or subsequently entered into with the authority or, in the absence of such provisions, to the state board of conciliation and arbitration, or other board or body having similar powers and duties. The provisions of general or special laws relative to rates of wages, hours of employment and working conditions of public employees, shall not apply to the authority nor to the employees thereof, but the authority and its employees shall be governed with respect to hours of employment, rates of wages, salaries, hours, working conditions, health benefits, pensions and retirement allowances of its employees by the laws relating to street railway companies."

392 Mass. 407 415

Local 589, Amalgamated Transit Union *v.* Massachusetts Bay Transportation Authority.

challenged provisions of the award intrude on areas of conduct which the Legislature intended to remain independent of the arbitrator's regulation, we begin with the language of the statute. "[S]tatutory language is the principal source of insight into legislative purpose." *Bronstein* v. *Prudential Ins. Co. of Am.,* 390 Mass. 701, 704 (1984). *Commonwealth* v. *Gove,* 366 Mass. 351, 354 (1974). We construe this statutory language under the standard provided in G. L. c. 4, § 6, that unless a statutory term is "technical," "words and phrases shall be construed according to the[ir] common and approved usage." See *United States Jaycees* v. *Massachusetts Comm'n Against Discrimination, supra* at 601. Where the statutory language is clear and unambiguous and leads to a workable result, we need look no further. See *Bronstein* v. *Prudential Ins. Co. of Am., supra.*

Whether the arbitrator improperly intruded on the MBTA's right to hire part-time employees turns on how broadly the Legislature intended the term "hire" to sweep. The parties have not argued, nor do we conclude, that the term "hire," as used in G. L. c. 161A, § 19 (*viii*), was intended to be a technical term. We therefore construe it according to its ordinary meaning. See *Prudential Ins. Co. of Am.* v. *Boston,* 369 Mass. 542, 546 (1976). To "hire" ordinarily means "to engage the personal services of for a fixed sum." Webster's Third New Int'l Dictionary 1072 (1968). Cf. *Cardellicchio* v. *Board of Retirement of Natick,* 391 Mass. 760, 763 (1984). We think that all the challenged provisions of the award contravene the ordinary meaning of the MBTA's statutory inherent management right to hire part-time employees. Accordingly, we need look no further than the plain language of G. L. c. 161A, §§ 19-19G, to conclude the judge properly declared the challenged provisions of the award unenforceable.

The arbitrator's award purports to regulate the MBTA's employment practices regarding part-time employees. It provides how many may be hired, in what circumstances they may be actively employed, when they may work, and on what they may work. All these restrictions presumably are means by which the arbitrator sought to carry out his limited statutory duty to set wages, hours, and conditions of employment between

the MBTA and the union. Nonetheless, he acted beyond his authority and in contravention of the plain language of the statute when, as part of determining wages, hours, and conditions of employment, he sought to restrict the MBTA's discretion to hire and schedule part-time employees. See *Watertown Firefighters, Local 1347* v. *Watertown,* 376 Mass. 706, 715 (1978).

The MBTA's inherent management right to "hire" part-time employees would be of little practical value if it could be indirectly restricted by limits on the number of part-time employees which can be hired, by arguably punitive consequences attached to their being "actively employed" and by restrictions on the work to which they may be assigned. The ordinary meaning of the term "hire" certainly contains no such inherent qualifications, and the words of the statute neither express nor imply any such limits. We believe that construing the MBTA's right to hire part-time employees as including these qualifications would frustrate the Legislature's intent.

We are supported in this conclusion by other areas of decision making reserved by the Legislature under G. L. c. 161A, § 19, for the unfettered, reasonable judgment of the MBTA. They are the inherent management rights to "appoint," "employ," "assign," and "determine levels of staffing" of MBTA personnel. These too are not susceptible to collective bargaining and may not be considered by the arbitrator in arriving at his award. Nonetheless, the challenged provisions of the arbitrator's award interfere with these rights by purporting to regulate the employment and scheduling practices of the MBTA as they relate to part-time employees. The language and general design of G. L. c. 161A, § 19, indicate the Legislature did not intend to provide the arbitrator with such authority.

In another context we have found that the procedures used in layoffs may be subject to collective bargaining, even though the right to determine staff size on an annual basis is an inherent management prerogative not susceptible to collective bargaining. See *Boston Teachers Local 66* v. *School Comm. of Boston,* 386 Mass. 197, 212-214 (1982). Cf. *School Comm. of Boston* v. *Boston Teachers Local 66,* 378 Mass. 65,

392 Mass. 407                                                                 417

Local 589, Amalgamated Transit Union v. Massachusetts Bay Transportation Authority.

72-73 (1979). In doing so, however, we were reviewing a school committee's inherent management prerogative under a different statute. At issue was the extent to which a statute providing that the school committee "shall have general charge of all public schools," restricts the school committee's ability to bargain away its control over the size of the teaching staff. *Boston Teachers Local 66* v. *School Comm. of Boston, supra* at 212. General Laws c. 161A, § 19, defines explicitly the matters of inherent management right with respect to which the MBTA may not bind itself; such explicit statutory restrictions were not present in the teachers' cases. The Legislature has made clear that it intends the MBTA to act without interference in its hiring of part-time employees. We believe that determining whether and when to lay off part-time employees is included in this hiring process and is not subject to regulation by an arbitrator.

Measuring the challenged provisions of the arbitrator's award against the plain language of G. L. c. 161A, §§ 19 and 19F, we conclude that the arbitrator exceeded his authority in framing them and that they are unenforceable.

*Severance.* Because we have concluded that the award is partially invalid, a question now arises as to enforcement of the award. The judge concluded that the unenforceable provisions of the award should be severed from the award and the remainder enforced. The MBTA agrees with this determination. The union and the arbitrator challenge it. They contend that the award must be remanded to the arbitrator for further consideration. We agree with the judge. The unenforceable provisions of the award may be severed from it and the remainder enforced.

In considering whether to sever unenforceable provisions of an interest arbitration award and enforce the remainder, we look to the results of such action. We will sever and enforce the remainder of an award where it "would not do an injustice." *Watertown Firefighters, Local 1347* v. *Watertown, supra* at 717. More specifically, we consider two issues. "[V]acation of the entire award could come about because of a functional relationship between the legal and illegal parts such that execu-

tion of one without the other would produce an untoward or unworkable result. So also the whole award may be threatened where it can be seen that the arbitrator's decision as to the legal part was influenced by his disposition of the part later found to be illegal." *Marlborough Firefighters, Local 1714* v. *Marlborough,* 375 Mass. 593, 597-598 (1978), citing *McCormick* v. *Gray,* 54 U.S. (13 How.) 26, 39 (1851).

There is no question that the provisions of the award other than those relating to part-time employees are workable. The provisions of the award which we have declared unenforceable have only an indirect bearing at best on full-time employees. Similarly, we do not find the provisions of the award which do not relate to part-time employees sufficiently influenced by the unenforceable part-time provisions to require reconsideration by the arbitrator. The structure of the arbitrator's award itself confirms this conclusion. The award was separated into two sections. Part IV is labeled "ARBITRATION AWARD (for Other than Part-Time Employees)" and Part V is labeled "DISCUSSION AND AWARD: PART-TIME EMPLOYEES." These sections contain separate reasoning and conclusions in support of most of their respective award provisions. Where there is overlap, the part-time provision relies on the full-time provision. The judge focused on this division of sections to conclude they represented separate awards. Whether they are in fact separate awards, they do not demonstrate the interdependence required for us to vacate the provisions relating to other than part-time employees based on our conclusions regarding the challenged part-time employee provisions.

We also conclude that enforcing the part-time portion of the award after severing the provisions we have disallowed would not lead to an injustice. The arbitration award indicates that the critical issue before the arbitrator, presumably in connection with both full-time and part-time employees, was wage levels. The arbitrator's determination for part-time employees, however, evidences no reliance on the provisions of the award we have disallowed. The wage provision provides as follows: "Part-time employees shall be paid at the same rate as full-time employees, subject to the new hire progression. Those hired

prior to the date of this award shall be given credit for such prior service in applying the progression steps. The parties shall determine the number of hours of work necessary to satisfy the progression steps." We see nothing in this provision to indicate it was influenced by the number of part-time employees hired by the MBTA or when they are assigned to work. The arbitrator relied instead on wage considerations determined in the context of full-time employees. The award demonstrates no intent or need to design a separate wage package for part-time employees simply because the MBTA is not bound by the hiring or scheduling restrictions the arbitrator sought to impose. The other enforceable provisions of the part-time portion of the award evidence equally little influence by the provisions we have disallowed. Accordingly, we agree with the judge that the "severing of the aforementioned sections of the part-time award does not disturb the integrity of the remainder of the part-time award."

We dismiss the appeal from the denial of the arbitrator's motion to intervene. We affirm the entry of summary judgment which established the unenforceability of the contested provisions, severed the unenforceable provisions, and ordered the enforcement of the remainder of the award.

*So ordered.*