36                                          406 Mass. 36

Massachusetts Bay Transportation Authority *v.* Local 589, Amalgamated Transit Union.

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY *vs.*
LOCAL 589, AMALGAMATED TRANSIT UNION.

Suffolk. October 5, 1989. - November 9, 1989.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Arbitration*, Authority of arbitrator. *Massachusetts Bay Transportation
Authority*, Collective bargaining. *Practice, Civil*, Standing, Moot case.

The management of the Massachusetts Bay Transportation Authority, in
deciding to fill certain vacant positions in accordance with an affirma-
tive action plan, was exercising an "inherent management right" which,
under G. L. c. 161A, § 19, is excluded from the collective bargaining
process; consequently, an arbitrator purporting to act under the griev-
ance procedure of the authority's collective bargaining agreement ex-
ceeded his authority by ordering that the positions be filled on a strict
seniority basis. [39-41]
A union lacked standing to maintain its individual members' claims for
monetary damages for their employer's alleged Federal civil rights vio-
lations. [41]
A union's claim for an injunction against an employer's implementation of
an affirmative action plan became moot when the implementation of the
plan was discontinued. [41]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 31, 1986.

The case was heard by *Walter E. Steele*, J., on a motion
for summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Douglas Taylor* of the District of Columbia (*John F. Mc-
Mahon* with him) for the defendant.

*Jonathan M. Albano* (*Scott C. Moriearty & Carol A.
Buckley* with him) for the plaintiff.

NOLAN, J. The plaintiff, Massachusetts Bay Transporta-
tion Authority (MBTA), brought this action in the Superior

406 Mass. 36                                              37

Massachusetts Bay Transportation Authority *v.* Local 589, Amalgamated Transit Union.

Court in Suffolk County against the defendant, Local 589 Amalgamated Transit Union (union). The MBTA sought to vacate an arbitrator's award under G. L. c. 150C, § 11 (3) (1988 ed.), asserting that the arbitrator exceeded his power in granting the award. The union counterclaimed seeking to enforce the arbitrator's award. The union also sought monetary damages and injunctive relief under 42 U.S.C. §§ 1981 and 1983 (1982), against the MBTA on behalf of certain of its individual members, asserting that the MBTA's use of an affirmative action plan had violated these individuals' civil rights. Both parties moved for summary judgment. The judge granted summary judgment for the MBTA on both its claim and the union's civil rights counterclaims and ordered that the arbitrator's award be vacated. We transferred the union's appeal to this court on our own motion.

The facts are undisputed and may be summarized as follows. The MBTA "money room" is a facility designed to collect and count MBTA fare receipts and then prepare them for deposit. In 1984, police and investigators from the Attorney General's office discovered that some money room employees were stealing from the MBTA money room. These employees were arrested, convicted of larceny of MBTA property, and discharged. This event created several job vacancies in the money room.

After contracting the money room work out to private companies for a time, the MBTA approached the union about restaffing the money room. The MBTA wished to use an affirmative action plan in filling the vacancies. The union objected, stating that its collective bargaining agreement required the MBTA to fill the vacancies pursuant to a strict seniority system. The MBTA, nevertheless, filled the vacancies pursuant to its affirmative action plan.[1]

---

[1]After the vacancies occurred, the MBTA's director of equal employment opportunity and affirmative action conducted a utilization analysis of the work force in the money room. The analysis revealed a severe underutilization of minorities and women in the money room. The director found that only two of the money room's fifty-seven employees were members of minorities and only one was female. At the same time, 33% of the MBTA

In implementing its affirmative action plan, the MBTA divided the applicant pool into three lists. One list included only females. A second list included only minority males. The third list consisted of only nonminority males. The MBTA then tested several of the most senior employees within each list to determine which employees from each list were qualifed to work in the money room. A number of employees within each list passed the test. The MBTA then filled eight of the sixteen vacancies in the money room with the eight most senior qualified employees from the nonminority male list and filled the other eight positions with four from the female list and four from the male minority list.

In October of 1985, the union presented its case as a grievance before an arbitrator asserting that its collective bargaining agreement with the MBTA required that the MBTA fill the vacancies according to strict seniority and that the MBTA's application of affirmative action principles violated this agreement. The MBTA objected to the arbitrator's authority to hear the union's grievance on the ground that its decision to fill the money room vacancies was an exercise of its "inherent management right" pursuant to G. L. c. 161A, § 19 (1988 ed.) and, thus, beyond the scope of arbitration. The arbitrator ruled in favor of the union and ordered the MBTA to assign eight money room positions to the most senior qualified applicants pursuant to strict seniority. The arbitrator further directed that the MBTA pay these eight employees for all benefits lost, including back pay.

In granting the MBTA's motion for summary judgment, the judge ruled as a matter of law that (1) the decision to assign employees to the money room was an exercise of its "inherent management right," pursuant to G. L. c. 161A, § 19, and, thus, beyond the scope of arbitration; and (2) the MBTA's implementation of its affirmative action plan did not violate the union members' civil rights because the

employees in service maintenance positions (within which the money room positions were classified) were members of minorities and 12% were female. Further, 22% of the MBTA's over-all workforce were members of minorities and 11% were female.

406 Mass. 36                                    39

Massachusetts Bay Transportation Authority *v.* Local 589, Amalgamated Transit Union.

MBTA implemented the plan to meet a compelling State interest and the plan was narrowly tailored to meet that interest. Accordingly, the judge ordered that the arbitrator's award be vacated and dismissed the union's counterclaims.

On appeal, the union first asserts that the judge erred in ordering that the arbitration award be vacated. Specifically, the union argues that the arbitrator had the power to decide which sections of the collective bargaining agreement may be enforced in light of the MBTA's "inherent management right" under G. L. c. 161A, § 19. The union asserts that the arbitrator properly concluded that the MBTA's decision to make the assignments in accordance with its affirmative action plan was not a matter of "inherent management right" under the statute. The union asserts that the judge erred in not deferring to the arbitrator's interpretation of "inherent management right" under the statute. Secondly, the union asserts that the judge erred in granting summary judgment in favor of the MBTA on the union's counterclaims. The union argues that the preferential assignments violated the senior white male applicants' constitutional rights in violation of 42 U.S.C. §§ 1981 and 1983 (1982). We affirm the judge's grant of summary judgment in favor of the MBTA.

1. *The arbitration award.* We hold that the arbitrator exceeded his authority in making an award which purported to regulate a matter within the MBTA's "inherent management right" under G. L. c. 161A, § 19. "An arbitrator exceeds his authority when his award requires conduct by a public employer beyond that to which the public employer may bind itself or allow itself to be bound." *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Auth.*, 392 Mass. 407, 411 (1984). *Watertown Firefighters, Local 1347* v. *Watertown*, 376 Mass. 706, 715 (1978). Under G. L. c. 161A, § 19, the MBTA may not legally enter into a collective bargaining agreement which would require it to apply a strict seniority system in filling the vacancies.

The MBTA contends that the arbitrator exceeded his authority in making the award because the award conflicts with the MBTA's exercise of its "inherent management right"

under G. L. c. 161A, § 19. In arguing that the arbitrator exceeded the scope of his authority, the MBTA makes a jurisdictional challenge. See *Local 589, Amalgamated Transit Union, supra* at 410. This court may review whether the arbitrator exceeded his authority in making an award which would require the MBTA to fill the vacancies pursuant to the collective bargaining agreement. See *id.* at 410-411 (scope of arbitrator's authority always open to judicial review). Further, in determining whether the arbitrator exceeded the scope of his authority, we are not bound by the arbitrator's interpretation of G. L. c. 161A, § 19. See *id.* at 411 (court, upon review, need not defer to arbitrator's interpretation of relevant statutes).

General Laws, c. 161A, § 19, provides that "the directors of the MBTA shall have no authority to bargain collectively and shall have no authority to enter into collective bargaining agreements with respect to matters of "inherent management right." The statute defines "inherent management right" as including the right "*to direct, appoint, employ; assign and promote officers, agents and employees and to determine the standards therefor.*" G. L. c. 161A, § 19 (*i*). Further, G. L. c. 161A, § 19F (8) (1988 ed.), precludes the arbitrator from considering material not subject to the collective bargaining process under G. L. c. 161A, § 19. Thus, the MBTA's right to "appoint," "employ," and "assign," personnel and "to determine the standards therefor," is not susceptible to collective bargaining. See *Local 589, Amalgamated Transit Union, supra.* The parties do not argue, nor do we conclude, that the Legislature intended the terms "assign," "employ," or "appoint" to be technical terms. We therefore construe these terms according to their ordinary meaning. *Id.* at 415. To "assign" ordinarily means "to appoint to a post or duty." Webster's Third New Int'l Dictionary 132 (1961). To "appoint" means "to assign, designate, or set apart by authority." *Id.* at 105. To "employ" means "to use or engage the services of" or "to provide with a job." *Id.* at 743. We hold that the MBTA's decision to fill the vacancies in the money room was an exercise of its "inherent management

right" to "assign," "employ," or "appoint" employees and to "determine the standards therefor." Accordingly, the arbitrator's award is void to the extent that it purports to regulate the MBTA's exercise of its "inherent management right" under G. L. c. 161A, § 19. See *id.* at 411.

We affirm the judge's entry of summary judgment on the MBTA's claim that the arbitrator exceeded his authority under G. L. c. 150C, § 11 (3).

2. *The union's constitutional claims.* The union claims that senior qualified nonminority male employees were passed over for the money room vacancies because of their race or gender in violation of their constitutional rights under the equal protection clause of the Fourteenth Amendment to the United States Constitution.[2] The union sought both monetary damages and injunctive relief on behalf of these individual members. The Superior Court judge ruled that the affirmative action plan met the requirements of the Fourteenth Amendment. We need not reach this constitutional question. See *Commonwealth* v. *Paasche,* 391 Mass. 18, 21 (1984) (constitutional questions not decided unless necessary). We hold that, because the monetary claims are peculiar to the individual union members, the union lacks standing to raise their claims for monetary relief. See *United Auto, Aerospace & Agricultural Workers* v. *Brock,* 477 U.S. 274, 287 (1986); *Warth* v. *Seldin,* 422 U.S. 490, 515-516 (1975). Further, the union's claim for injunctive relief is moot because the MBTA stopped implementing the affirmative action plan in June, 1987, due to the reduction in racial and gender imbalance within the MBTA's workforce resulting from its affirmative action program. See *Finance Comm'n of Boston* v. *Mayor of Boston,* 370 Mass. 693, 696 (1976); *Spear* v. *Boston,* 345 Mass. 744, 746 (1963).

_____

[2]The union brought its constitutional couterclaims pursuant to 42 U.S.C. §§ 1981 and 1983 (1982). Although the union's brief is unclear and does not fully brief the issue, we assume, as did the Superior Court, that the claims are based on the equal protection clause of the Fourteenth Amendment.

Accordingly, we affirm the Superior Court judge's dismissal of the union's claims. See *Breault* v. *Chairman of the Bd. of Fire Comm'rs of Springfield*, 401 Mass. 26, 34 (1987), cert. denied sub nom. *Forastiere* v. *Breault*, 485 U.S. 906 (1988) (upholding judgment on different grounds from those on which judge relied).

*Judgment affirmed.*