Gants, Ralph D., J.
On March 12, 1997, the plaintiff Adam & Associates International, Inc. (“Adam”) entered into a letter Agreement with the defendant William A. Berry & Son, Inc. (“Berry”) concerning engineering, procurement, and advisoiy services that Berry agreed to perform with respect to a burn unit facility (“the Facility”) that was being created at the Sonatrach Medical Center in Algiers, Algeria. A joint venture, Brown & Root/Condor (“B&R/C”) had entered into an agreement with the Algerian entity building this Facility, Entreprise Nationale Sonatrach (“Sonatrach”), to manage the construction of the Facility and take responsibility for the selection, procurement, delivery, and installation of the medical equipment needed for the bum unit. B&R/C had subcontracted with Adam to design and equip the bum unit at the Facility, and Adam, in turn, had subcontracted with Beriy through the March 12, 1997 Agreement to provide the building systems, components, and materials needed for the Facility, along with various services. In paragraph 12 of this Agreement, Berty agreed that it would not undertake for Sonatrach, Brown & Root, or B&R/C “any engineering, procurement or construction contract for a health care facility in Algeria except through Adam.” Agreement at 8.
Paragraph 11 of the Agreement included the following arbitration provision:
If the parties are unable to resolve any dispute arising hereunder, whether sounding in contract, statute, tort or other legal theory, the dispute shall be resolved by arbitration in Boston, Massachusetts pursuant to the then-current rules of the American Arbitration Association (“the AAA”). If the matters in dispute involve claims aggregating Five Hundred Thousand Dollars ($500,000) or less, the arbitration shall be conducted by a single arbitrator engaged in the practice of law, who is knowledgeable about the subject matter of the dispute, but if the claims aggregate more than that amount, the arbitration shall be conducted by a panel of three (3) neutral arbitrators, one a certified public accountant who is a partner in a so-called “Big Six” accounting firm with an office in Boston, Massachusetts, one a mechanical engineer and the third an architect experienced in hospital design. The arbitrator(s) shall be selected in accordance with the AAA procedures from a list of qualified persons maintained by the AAA. The arbitrator(s) shall only have authority to award compensatory damages, and shall not have authority to award punitive damages, other non-compensatory damages or any other form of relief, the parties hereby waiving all rights to and claims for relief other than compensatory damages. Adam agrees that the maximum amount of compensatory damages for which Berry shall be liable hereunder shall be Two Hundred Fifty Thousand Dollars ($250,000). Each party shall bear its own costs and attorneys fees and the parties shall share equally the fees and expenses of the arbitrator(s). The decision and award of the arbitrator(s) shall be final and binding, and judgment upon the award may be entered in any court having jurisdiction thereof.
Agreement at 7-8.
*390 In the Complaint filed in this action, Adam alleged that Berry had violated paragraph 12 of the Agreement by contracting with B&R/C in June 2000 to design two military hospitals in Algeria, and in October 2001 to provide mechanical, electrical, and plumbing equipment and materials for these two hospitals. Berry moved to stay this action and to compel arbitration. On June 20, 2005, Judge Nonnie Burnes of this Court allowed the motion and ordered that the case be stayed pending arbitration. On June 21, 2005, Judge Burnes denied Adam’s emergency motion to file a supplemental brief to address issues not raised at the oral argument of the motion, noting that “[t]he issue of any limitation of damages may be dealt with later, if necessary.”
Adams then made a Demand for Arbitration. It claimed more than $500,000 in damages, so a panel of three arbitrators was selected in accordance with the Agreement. After hearing evidence over eleven days, the arbitration panel issued its Arbitration Award on February 5, 2007. The arbitrators found that Berry had violated what the arbitrators characterized as the covenant not to compete in paragraph 12 of the Agreement. In determining the amount of damages, the arbitrators examined the provision in the arbitration clause of the Agreement that appeared to limit Berry’s liability to Adam to $250,000 in compensatory damages. The arbitrators declared:
The parties’ agreement was ambiguous on its face in presenting both a $250,000 cap of some kind together with a $500,000 claim threshold for an enlarged and specialized panel of arbitrators. A $250,000 cap applicable to all breaches would have made the $500,000 threshold superfluous.
Arbitration Award at 16-17. Having found the arbitration provision ambiguous as to the limitation of liability, the arbitrators permitted parol evidence regarding the drafting of the Agreement and the intent of the parties. The arbitrators construed “the $250,000 cap limitation of the [Agreement] as a limitation on warranty recoveiy and not limiting the type or amount of damages awardable by any appropriate tribunal and not limiting the scope of arbitral jurisdiction in connection with contract breaches other than warranty breaches.” Id. at 17. In essence, the arbitrators found that the cap limited Berry’s liability only for breach of warranty, and did not limit its liability for any breach of the non-compete provision in paragraph 12. The arbitrators then awarded Adams $1,154,885 in what it characterized as “disgorgement damages” arising from Berry’s breach of the non-compete provision, finding that “Adam does deserve a remedy proportionate to a realistically appraised loss” and that the amount of damages awarded was “a fair appraisal of an appropriate substitute for the injunction effect Adam could have obtained if Berry honored the covenant.” Id.
The arbitrators found, “The circumstances do not warrant a disgorgement of Berry’s profits on its entire $US-110 million of construction services revenue, but only as to profits earned on these projects stated in (or before) the three year period after December 31, 1998.” Id. at 16. The arbitrators had earlier found that they would limit the duration of the covenant not to compete to “three years from the beginning of 1999,” id. at 15, which this Court understands to mean that the covenant would not apply to any competition by Beny on or after January 1, 2002. Therefore, the “disgorgement damages” appear to reflect the amount of Berry’s profits on its construction services revenue from B&R/C arising from the construction of the two Algerian military hospitals for the period from January 1, 1999 through December 31, 2002.
Berry now moves to vacate or modify the Arbitration Award, claiming that the arbitrators exceeded the scope of their authority (1) by awarding damages that were not “compensatory damages” and (2) by awarding damages in excess of the $250,000 limitation on Berry’s liability. Adam has cross-moved to confirm the Arbitration Award. After hearing, this Court DENIES Berry’s motion to vacate or modify the Arbitration Award, and ALLOWS Adam’s motion to confirm the arbitration award.
DISCUSSION
It is a well-established principle of law that “judicial review of arbitration awards is confined to certain narrow grounds.” City of Lawrence v. Falzarano, 380 Mass. 18, 28 (1980). The Uniform Arbitration Act, codified in Massachusetts at G.L.c. 251, establishes five narrow grounds for vacation of an arbitrator’s award:
(1) the award was procured by corruption, fraud or other undue means;
(2) there was evident partiality by an arbitrator appointed as a neutral, or corruption in any of the arbitrators, or misconduct prejudicing the rights of any party;
(3) the arbitrators exceeded their powers;
(4) the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section five, as to prejudice substantially the rights of a party; or
(5) there was no arbitration agreement and the issue was not adversely determined in proceedings under section two and the party did not participate in the arbitration hearing without raising the objection . . .
G.L.c. 251, §12(a). Effectively, unless one or more of these grounds exist, a court of law must enforce an arbitrator’s decision, even if it is plainly wrong as a matter of fact or law. As the Supreme Judicial Court has declared, a court is “strictly bound by an *391 arbitrator’s findings and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record at the arbitration hearing... Absent fraud, errors of law or fact are not sufficient grounds to set aside an award.” City of Lynn v. Thompson, 435 Mass. 54, 61 (2001), quoting Plymouth-Carver Reg’l Sch. Dist. v. J. Farmer & Co., 407 Mass. 1006, 1007 (1990) (internal quotations omitted).
Here, Berry seeks to vacate or modify the Arbitration Award on a single ground — that the arbitrators “exceeded their powers.” G.L.c. 251, § 12(a). In determining whether the arbitrators “exceeded their powers,” this Court must first determine what, if any, deference is due to the arbitrators’ interpretation of the Agreement that both granted and limited “their powers.” Berry contends that no deference is due and that this Court must interpret those provisions de novo, as if the case had never gone to arbitration and the Court was deciding it for the first time. Adam contends that substantial deference is due to the arbitrators’ interpretation of the Agreement’s provisions limiting their powers, and that the arbitrators’ interpretation should not be undone unless it was “based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling.” Cytyc Corp. v. Deka Products Ltd., 439 F.3d 27, 34 (1st Cir. 2006), quoting Advest, Inc. v. McCarthy, 914 F.2d 6, 8-9 (1st Cir. 1990).
“Whether an arbitrator has acted beyond the scope of authority conveyed to him is always open to judicial review.” Local 589, Amalgamated Transit Union v. Massachusetts Bay Transp. Authy., 392 Mass. 407, 410-11 (1984). Pragmatically, arbitrators may exceed the scope of their authority in two ways. First, they may issue a decision that, directly or indirectly, requires a party to commit an act or engage in conduct that is prohibited by state or federal law. G.L.c. 150C, §11(3) (authorizing the Superior Court to vacate an arbitration award regarding a collective bargaining agreement on this ground); Local 589, Amalgamated Transit Union, 392 Mass. at 411 (“An arbitrator exceeds his authority where his award requires conduct by a public employer beyond that to which the public employer may bind itself or allow itself to be bound”); City of Lawrence v. Falzarano, 380 Mass. at 28 (arbitration may not “award relief of a nature which offends public policy or which directs or requires a result contrary to express statutory provision”), quoting Eager, The Arbitration Contract and Proceedings, §121.6.
Second, they may issue an award as to a matter or in an amount that, under the terms of the contract they were appointed to interpret, is expressly beyond their authority as arbitrators. The arbitrators may not “transcend the limits of the contract of which the agreement to arbitrate is but a part.” Lawrence v. Falzarano, 380 Mass. at 28. “Otherwise formulated, the arbitrator may not ignore the plain words of the contract.” Grobet File Co. of America, Inc. v. RTC Systems, Inc., 26 Mass.App.Ct. 132, 134-35 (1988). See United Paperworkers Intl. Union v. Misco, Inc., 484 U.S. 29, 38 (1987) (“The arbitrator may not ignore the plain language of the contract”). As the Appeals Court has stated, “Had the contract, for example, limited damages payable for any combination of defaults to $50,000, then the arbitrator could not award $100,000, even though the aggrieved party may have suffered damages in that amount.” Grobet File Co. of America, Inc. at 134.
In determining whether arbitrators have exceeded their authority by directing a party to engage in conduct that allegedly is illegal, “judicial review of the award is independent,” Local 589, Amalgamated Transit Union, 392 Mass. at 411, which effectively means that judicial review is de novo, with no deference given to the arbitrators’ decision. See also City of Somerville v. Somerville Man. Employees Ass’n, 418 Mass. 21, 25 (1994). Indeed, pragmatically, when the issue is whether the arbitrators have directed a party to engage in illegal conduct, a court may not reasonably give any deference to the arbitrators’ decision for at least two reasons. First, if deference were given, a court may need to confirm an arbitration award even though it found that the award would require a party to violate the law. A court cannot reasonably be placed in the position of having to confirm an arbitration decision that mandates conduct in violation of prevailing law. Second, if a party acted in accordance with an arbitration award and thereby violated the law, he could not legally justify his illegal conduct by arguing that he acted in reliance on the arbitrators’ decision. An arbitrator cannot direct a person to act in violation of the law and thereby immunize that person from the consequences of his illegal conduct.
In contrast, in determining whether arbitrators have exceeded the authority granted to them by contract, judicial review focuses on the language of the contract that grants or limits the arbitrators’ authority. “It is clear that an ‘arbitrator may not ignore the plain words of [a] contract.’ ” Sheriff of Suffolk County v. AFSCME Council 93, Local 419, 67 Mass.App.Ct. 702, 706 (2006) (“Sheriff of Suffolk County I”), quoting Grobet File Co. of America, Inc. at 134-35. When the “limiting boundaries” are “set forth with clarify” and the limiting words are “plain,” the arbitrator may not exceed those limits. See Grobet File Co. of America, Inc. at 135. However, “[i]f there is room for doubt or interpretation on the question, then the issue properly lies within the broad authority conferred upon arbitrators of civil disputes.” Id., quoted by Sheriff of Suffolk County v. AFSCME Council 93, Local 419, 68 Mass.App.Ct. 222, 226 (2007) (“Sheriff of Suffolk County II”). “So long as an arbitrator’s award draws its ‘essence’ from the parties’ bargained-for contract language, a court has no place in disturbing the award, even if it disagrees with the arbitrator’s inter *392 pretation of such contract language.” Sheriff of Suffolk County II, 68 Mass.App.Ct. at 226 quoting United Paperworkers Intl. Union v. Misco, Inc., 484 U.S. at 37-38. “[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.” United Paperworkers Intl. Union v. Misco, Inc., 484 U.S. at 38.
Applying this guidance, this Court concludes that, if the limiting language in the contract is ambiguous, the arbitrators are granted great deference in interpreting the ambiguous language, and their interpretation will not be overturned, even if the Court believes it seriously in error, as long as it draws its “essence” from the language of the contract. Therefore, for all practical purposes, if the Court looks at the limiting language of the contract and finds that it is sufficiently ambiguous that the Court, if it were deciding the matter de novo, would admit parol evidence to clarify its meaning, then the arbitrators’ interpretation of that language, assisted by the parol evidence admitted at the arbitration hearing, will almost always survive judicial review. The more difficult question is whether the Court should decide de novo whether the language is so clear that parol evidence should not be considered, because extrinsic evidence cannot contradict the clear meaning of a contract, or whether the Court should provide some deference to the arbitrators’ finding that the language was ambiguous and that parol evidence reasonably could help to elicit its meaning.
This Court finds that some deference to the arbitrators is owed with respect to their determination that the contract language was ambiguous. Recognizing both that arbitrators may not ignore the clear language of the contract and that the parties, in choosing to resolve their dispute through arbitration, have agreed to allow the arbitrators to interpret their contract, this Court finds that the degree of deference appropriate to this determination is whether any reasonable judge, looking at the same language in the contract, could agree with the arbitrators that the language is sufficiently ambiguous as to justify the consideration of parol evidence. If a reasonable judge could come to that conclusion, then the arbitrators’ decision to admit parol evidence will be upheld, even if the reviewing judge would not have come to that conclusion. If the reviewing judge, however, concludes that neither he nor any other reasonable judge could have found any ambiguity in the contract language, then any interpretation by the arbitrators, based on parol evidence, that differs from the ciystal clear meaning of the language will be rejected.[1] This is consistent with the principle that, when arbitrators interpret the terms of a contract and their ruling will not require anyone to act in violation of law, deference is owed to their ruling as long as it is an arguable interpretation that draws its essence from the language of the contract. See Sheriff of Suffolk County II, 68 Mass.App.Ct. at 226; Grobet File Co. of America, Inc. at 135; United Paperworkers Intl. Union v. Misco, Inc., 484 U.S. at 38.
Having established the standard of review, the balance of this decision is relatively straightforward. As to the award of disgorgement damages, this Court finds that it is crystal clear that the Agreement prohibited punitive damages, but it is not crystal clear that the limited authority to award only “compensatory damages” also barred disgorgement damages. The law recognizes that “an element of uncertainty” as to the amount of compensatory damages does not bar their recovery, and that a damage award may be reasonably approximated, especially when ‘the difficulties in determining damages arise in large part from [the defendant’s conduct].’ “ National Merchandising Corp. v. Leyden, 370 Mass. 425, 430 (1976), quoting Air Technology Corp. v. General Elec. Co., 347 Mass. 613, 627 (1964). Here, damages arising from Berry’s violation of the covenant not to compete in paragraph 12 of the Agreement were inherently difficult to measure, but the arbitrators found that Berry’s profits for the three-year period commencing on January 1, 1989 were a reasonable estimate of the royalty that Adam would have received had Berry complied with paragraph 12 and negotiated a release of its obligation. See Arbitration Award at 14. Moreover, while disgorgement is formally an equitable remedy designed to prevent the wrongdoer from enjoying its unjust enrichment, here it also provided Adam with compensation for the business opportunities that it lost because of Berry’s breach of the covenant not to compete. Consequently, this Court finds that disgorgement damages were arguably within the scope of the compensatory damages authorized by the Agreement, and that a reasonable judge could have concluded, as did the arbitrators, that disgorgement damages provided a reasonable approximation of the losses incurred by Adam from Berry’s breach of paragraph 12 of the Agreement. Therefore, this Court defers to the arbitrators’ award of disgorgement damages as compensatory damages, and finds that the arbitrators did not exceed their powers by awarding this measure of damages.
As to the arbitrators’ award of damages well above the $250,000 limitation in the arbitration provision, this Court finds that a reasonable judge could have found that the language establishing this limitation in paragraph 11 of the Agreement was ambiguous in the context of the entirety of that paragraph, and admitted parol evidence to clarify its meaning. The arbitrators observed that paragraph 11 provided that three arbitrators must be appointed if the aggregate of the claims in dispute exceeded $500,000 and thought that this requirement would be “superfluous” if there were a $250,000 cap on liability. Arbitration Award at 16-17. While the arbitrators erred in their logic as to superfluity, since the liability cap applied only to Berry's damages, not to any damages due from Adam, the fact *393 remained that paragraph 11 did not require a single arbitrator for all claims brought by Adam against Berry and limit the need for three arbitrators to claims brought by Berry against Adam that exceeded $500,000. A reasonable judge may have shared the arbitrators’ confusion as to why the parties would require three arbitrators to resolve Adam’s claims against Berry if the parties understood that Beriy’s liability was capped at $250,000. As a result, a reasonable judge could have found the language of the $250,000 limitation of liability ambiguous in the context of the entirety of paragraph 11, and invited parol evidence to clarify the parties’ intent in setting that limitation. Since a reasonable judge could have found, as did the arbitrators, that the Agreement was not ciystal clear on its face as to the limitation of liability, it was permissible for the arbitrators to consider parol evidence to determine the intent of the parties in agreeing upon that language, and ultimately to give that provision a narrower meaning than would be apparent from its language — finding that it limited Berry's liability only as to breach of warranty damages, not damages arising from the breach of the covenant not to compete. Therefore, this Court defers to the arbitrators’ interpretation of that limitation of liability provision, and finds that the arbitrators did not exceed their powers in awarding damages greater than $250,000 against Berry.
ORDER
For the reasons stated above, this Court ORDERS as follows:
1. Berry's motion to vacate or modify the Arbitration Award is DENIED.
2. Adam’s motion to confirm the Arbitration Award is ALLOWED.

This standard is similar to but slightly more rigorous than that adopted by the First Circuit, which would reject the arbitrator’s finding only if it were “based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling.” Cytyc Corp. v. Deka Products Ltd., 439 F.3d at 34. While the First Circuit may assume that all judges are reasonable and that no judge conceivably would engage in “palpably faulty” reasoning, this Court is unwilling to act on that assumption and prefers not to speculate as to the reasoning that may conceivably be employed by the least reasonable of all judges.