222 68 Mass. App. Ct. 222 (2007)

Sheriff of Suffolk County *v.* AFSCME Council 93, Local 419.

# Sheriff of Suffolk County *vs.* AFSCME Council 93, Local 419.

No. 05-P-1584.

Suffolk. October 16, 2006. - February 13, 2007.

Present: Kafker, Graham, & Katzmann, JJ.

*Sheriff. Correction Officer. Labor,* Discharge. *Public Employment,* Termination, Sick leave benefits. *Arbitration,* Collective bargaining, Vacating award, Authority of arbitrator.

A Superior Court judge erred in vacating the award of an arbitrator, where the arbitrator did not exceed his authority in making his award, even if that award was based on the arbitrator's possibly erroneous interpretation of the parties' collective bargaining agreement. [225-227]

Civil action commenced in the Superior Court Department on September 20, 2004.

The case was heard by *Mitchell J. Sikora, Jr.,* J.

*Daniel A. Cocuzzo* for the defendant.

*Timothy V. Dooling* for the plaintiff.

Graham, J. Pursuant to a collective bargaining agreement (CBA) between the sheriff of Suffolk County (sheriff) and AFSCME Council 93, Local 419 (union), correction officer Matthew Carver filed a grievance with the union, which then demanded arbitration regarding whether Carver had been fired by the sheriff without justification in violation of the parties' CBA. The grounds cited for Carver's discharge was that he had been absent from work without authorization, in violation of the parties' managing attendance policy (MAP).[1] An arbitrator upheld Carver's grievance and ordered the sheriff to reinstate him with back pay.

---

[1]The MAP was the product of negotiation by the parties in connection with the collective bargaining process, and it sets forth guidelines for the proper use of sick leave benefits for employees covered by the CBA.

The sheriff commenced an action in Superior Court seeking to vacate the arbitrator's award, see G. L. c. 150C, § 11, on the ground that the arbitrator exceeded his authority. The sheriff contended that the arbitrator based his award not on the terms and conditions of the MAP, as he was required to do, but rather on a "tortured reading" of that agreement that ignored its express language. A Superior Court judge agreed and entered a judgment vacating the arbitrator's award on the basis that the arbitrator had "misapplied" the provisions of the CBA and MAP. We reverse.

1. *Background.* We set out, in brief, the facts that form the basis of the arbitrator's award. The CBA between the parties was effective from July 1, 2000, through June 30, 2003. All disputes involving the question whether the sheriff was in compliance with express provisions of the CBA were subject to the grievance and arbitration procedure.

Carver was appointed to the position of correction officer (grade 1) within the Suffolk County sheriff's office, effective July 30, 1997. He was fired, by letter dated July 24, 2002, for "unauthorized use of sick time on May 29, 2002, and June 1 through June 5, 2002." Carver's absences followed an injury to his knee that he sustained at work on May 18, 2002, while allegedly restraining an unruly inmate.

On May 18, 2002, Carver notified the sheriff of his injury and later filed a workers' compensation claim.[2] Subsequent to this injury, Carver was absent from work from May 19, 2002, until he returned to work on June 8, 2002, at which time he submitted medical documentation stating that he was able to return to work without restrictions. The documentation

---

[2]The sheriff denied Carver's request for statutory workers' compensation benefits on June 5, 2002. As grounds for denying the claim, the sheriff submitted to the Department of Industrial Accidents (DIA) the following reasons: no personal injury; no injury arising out of and in the course of employment; no disability; no causal relationship between personal injury and disability; and late claim.

The DIA eventually determined that Carver was covered by workers' compensation for this injury, but issues relating to workers' compensation, and the impact it would otherwise have had on determining how many "undocumented" sick days Carver had and whether he had a "good" or "bad" quarter, were withheld from the arbitrator's consideration and are not at issue here.

contained a medical diagnosis of "right knee contusion," and also provided that in the "clinician's opinion" the injury was work related. The documentation further stated that Carver was prescribed a home exercise program and recommended a follow-up visit in three weeks. Carver had exhausted his sick leave as of May 21, 2002.

Despite the medical documentation presented by Carver, the sheriff contended that his absences were "undocumented" under the terms of the MAP, which defines "sick leave" as "[a] day on which an employee calls in sick . . . and has a sufficient accrued sick leave balance available." It further provides that if "an employee fails to provide a medical letter or has no sick time balance remaining, any days absent shall be considered an undocumented use of sick leave." If an employee has too many "undocumented" sick days in a quarter of the calendar year (a "bad quarter"), that employee is subject to graduated discipline, including dismissal.

After concluding that Carver had too many "undocumented" sick days for the quarter at issue, the sheriff imposed progressive suspensions on him, culminating in termination of employment, for his absence from work on May 29 and June 1 through 5, 2002.

The union filed a grievance, which was submitted to arbitration on the following stipulated questions: 1. "Were [Carver's] absences on May 29, June 1 through June 5, 2002 'undocumented' absences in accordance with [MAP]?" 2. "If not, what shall be the remedy?" The arbitrator determined that because Carver "submitted [medical] documentation to the [sheriff explaining his absences,] . . . [his] absences on May 29 and June 1 through 5 were covered by medical documents" and were not "undocumented" absences within the meaning of the MAP. Accordingly, the arbitrator ordered Carver reinstated.

The sheriff then commenced an action in the Superior Court, seeking an order to vacate the award, pursuant to G. L. c. 150C, § 11, claiming that the arbitrator's award was in excess of authority. Mindful of the narrow scope of judicial review respecting challenges to arbitration awards, the judge nonetheless agreed with the sheriff, concluding that the "clear language of MAP indicate[d] that Carver's absences . . . were

undocumented." He determined that the arbitrator "seemed" to interpret the relevant parts of MAP "to mean that if an employee supplies the [sheriff] with a medical letter *and* if that employee has no sick time balance remaining, then the employee's absences are documented. This interpretation of MAP is erroneous. . . . Here the clear language of the CBA and MAP show that the arbitrator has misapplied the terms of those governing documents." (Emphasis in original.)

2. *Discussion.* "[A]n arbitration award is subject to a narrow scope of review." *Superadio Ltd. Partnership* v. *Winstar Radio Prods., LLC*, 446 Mass. 330, 333 (2006). "Absent fraud, errors of law or fact are not sufficient grounds to set aside an award." *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990). The Legislature, in enacting G. L. c. 150C, § 11, has specified narrow grounds upon which a court is authorized to vacate an arbitration award. A court may take such corrective action if "(1) the award was procured by corruption, fraud or other undue means; (2) there was evident partiality by an arbitrator appointed as a neutral, or corruption in any of the arbitrators, or misconduct prejudicing the rights of any party; [or] (3) the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law." G. L. c. 150C, § 11(*a*).[3,4] Only the latter ground, specified in § 11(*a*)(3) — that the arbitrator acted in excess of his power — is alleged to have occurred here.

An arbitrator acts in excess of his or her "authority by granting relief beyond the scope of the arbitration agreement, . . . by awarding relief beyond that to which the parties bound themselves, . . . or by awarding relief prohibited by law." *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407

---

[3]Compare with G. L. c. 251, § 12, setting forth identical grounds for review in the context of private sector arbitration. See *Lynn* v. *Thompson*, 435 Mass. 54, 62 n.13 (2001), cert. denied, 534 U.S. 1131 (2002) (no distinction between public and private sector arbitration as to limited grounds on which court may vacate arbitration award). See also *Superadio Ltd. Partnership* v. *Winstar Radio Prods., LLC*, 446 Mass. at 334.

[4]The grounds set forth in G. L. c. 150C, § 11(*a*)(4) and (5), authorizing a court to vacate an arbitration award, are much further afield from the present situation.

Mass. at 1007. See *Lawrence* v. *Falzarano*, 380 Mass. 18, 28 (1980). "Whether an arbitrator has acted beyond the scope of authority conveyed to him is always open to judicial review." *Sheriff of Suffolk County* v. *AFSCME Council 93, Local 419*, 67 Mass. App. Ct. 702, 706 (2006), quoting from *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Authy.*, 392 Mass. 407, 410-411 (1984).

"It is clear that an 'arbitrator may not ignore the plain words of [a] contract.' " *Ibid.*, quoting from *Grobet File Co. of America* v. *RTC Sys., Inc.*, 26 Mass. App. Ct. 132, 134-135 (1988). "However, '[i]f there is room for doubt or interpretation on the question, then the issue properly lies within the broad authority conferred upon arbitrators of civil disputes.' " *Ibid.*, quoting from *Grobet File Co. of America* v. *RTC Sys., Inc.*, 26 Mass. App. Ct. at 135.

It was the arbitrator's interpretation of the bargained-for language that the sheriff and the union had agreed to accept, not the interpretation by a court acting upon a subsequent application under G. L. c. 150C, § 11. See *Morceau* v. *Gould-Natl. Batteries, Inc.*, 344 Mass. 120, 124 (1962); *Cape Cod Gas Co.* v. *United Steelworkers of America, Local 13507*, 3 Mass. App. Ct. 258, 261 (1975). So long as an arbitrator's award draws its "essence" from the parties' bargained-for contract language, a court has no place in disturbing the award, even if it disagrees with the arbitrator's interpretation of such contract language. *United Paperworkers Intl. Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 37-38 (1987). See also *Greene* v. *Mari & Sons Flooring Co.*, 362 Mass. 560, 563 (1972), quoting from *United Steelworkers of America* v. *Enterprise Wheel & Car Corp.* 363 U.S. 593, 599 (1960) ("[T]he parties contracted to submit their controversy to an arbitrator for final determination. His decision answered the questions submitted to him and was within the scope of the reference. The parties bargained for his final interpretation of their collective bargaining agreement. They got what they bargained for. '[Where] the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his' "). Here, the arbitration award was based on provisions of the CBA and MAP; it was not based on the

arbitrator's idiosyncratic brand of workplace justice. See *United Paperworkers Intl. Union, AFL-CIO* v. *Misco, Inc.,* 484 U.S. at 38.

In this case, there is no doubt that the arbitrator focused on the correct language in the MAP, but his interpretation of that language, that an employee who lacked sufficient accrued sick leave could avoid being charged with an "undocumented" sick day by providing appropriate medical documentation, may have been incorrect. The judge essentially ruled that the arbitrator's interpretation was erroneous. In short, the arbitrator may simply have got it wrong. The sheriff's argument, therefore, boils down to a claim that the arbitrator exceeded his authority by erroneously interpreting the contract provision. If that were the test for vacating an arbitration award, G. L. c. 150C, § 11 (or G. L. c. 251, § 12, as the case may be), would be drained of any meaning, so that any and all awards would be vulnerable to attack, merely on a complaint by a party who claims error on the part of an arbitrator in interpreting the particular contract language at hand. The settled rule, however, is that a court has "no business overruling an arbitrator because [it] give[s] a contract a different interpretation." *Boston* v. *Professional Staff Assn.,* 61 Mass. App. Ct. 105, 112 (2004), quoting from *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester,* 392 Mass. 184, 187 (1984).

*Conclusion.* The judgment is reversed, and the case is remanded for entry of a new judgment confirming the arbitration award.

*So ordered.*