Massachusetts Highway Dept. v. Massachusetts Organization of State Engineers and Scientists.

MASSACHUSETTS HIGHWAY DEPARTMENT vs. MASSACHUSETTS
ORGANIZATION OF STATE ENGINEERS AND SCIENTISTS
(and a companion case[1]).

Nos. 10-P-1256 & 10-P-1257.

Suffolk. April 6, 2011. - February 23, 2012.

Present: McHUGH, BROWN, & GRAINGER, JJ.

*Arbitration,* Authority of arbitrator, Collective bargaining, Award, Vacating
award. *Contract,* Collective bargaining contract, Arbitration. *Labor,* Arbitra-
tion, Collective bargaining, Grievance procedure.

A Superior Court judge erred in vacating awards by two arbitrators to engineers
employed by the State highway department, where the awards did not
exceed the arbitrators' authority, in that in each case, the question tendered
to the arbitrator for resolution was clear and unencumbered, involved a
dispute concerning the application or interpretation of the terms of the col-
lective bargaining agreement, and thus fell squarely within the scope of the
agreement's grievance provisions; therefore, in each case, the question
submitted, when considered in the context in which the arbitration proceed-
ings began, provided a foundation for the arbitrator to conclude that otherwise
applicable time limits did not prevent the arbitrator from reaching the merits
of the continuing violation claim that the engineers had tendered. [338-341]

CIVIL ACTIONS commenced in the Superior Court Department
on June 5 and July 23, 2007.

The cases were heard by *Thomas E. Connolly,* J.

*Eric P. Klein* for the defendant.

*James A. Sweeney,* Assistant Attorney General, for the plain-
tiff.

McHUGH, J. Arbitrators awarded Paul Kelly and Scott Winters,
two engineers employed by the Massachusetts Highway Depart-
ment (MHD), additional compensation for performing work that
a collective bargaining agreement (agreement) assigned to per-

[1]The companion case is between the same parties. The two cases separately
addressed the grievance of each engineer.

sonnel whom MHD employed at higher pay grades. On MHD's complaints to vacate the arbitrators' awards in the Superior Court and the cross motions of the Massachusetts Organization of State Engineers and Scientists (MOSES) for judgments on the pleadings and to confirm the awards, a judge vacated both awards, ruling that the arbitrators had exceeded their authority by ignoring provisions in the agreement that contained deadlines for filing grievances. MOSES, the exclusive bargaining agent for MHD engineers, appeals, claiming that the judge's rulings invaded an area reserved for the arbitrators. We agree and reverse the Superior Court judgments.

*Background.* Several provisions of the collective bargaining agreement lie at the heart of the present controversy, so our narrative begins there. Under Section 16.2, MOSES members who performed "out-of-title" work, i.e., work the agreement assigned to employees employed at a higher pay grade, were entitled to compensation at the higher level.

Disputes over entitlement to higher compensation, like "any dispute concerning the application or interpretation of the terms of" the agreement, were subject to a four-step grievance procedure. Step one involved an immediate supervisor; step two, an agency head designated by MHD; step three, the Commonwealth's Human Resources Department (HRD); and step four, arbitration. Each step had deadlines for filing the grievance or the appeal, and the first three had deadlines for decisions. Failure to render a decision by the applicable deadline gave the grievant or MOSES the right to move to the next step.

The steps and deadlines just described could be "waived by mutual agreement of the parties in writing." Finally,

> "[t]he arbitrator [had] no power to add to, subtract from, or modify any provision of [the] Agreement or to issue any decision or award inconsistent with applicable law. The decision or award of the arbitrator [was] final and binding in accordance with [G. L. c.] 150C."

The central issues in this case involve application of those provisions.

Insofar as Paul Kelly is concerned, the provisions came into play in the following fashion. MHD hired Kelly in 1988 as a

Civil Engineer I (CE-I). In April, 1998, he was promoted to CE-II and, in April, 2005, to CE-III, the highest civil engineer level. In October, 1995, however, MOSES filed a grievance on Kelly's behalf alleging that he "ha[d] been performing the duties of Civil Engineer III since April 27, 1991 while being compensated as a Civil Engineer I in violation of Article 16." As a remedy, MOSES sought payment to Kelly of the difference between the amount he had been paid and the amount he would have been paid had he been compensated at the higher levels applicable to work he had actually performed.[2]

At steps one and two, MHD denied the grievance. MOSES filed a third-step appeal with HRD on February 18, 1997. At that point, everything stopped for approximately nine years until HRD filed a summary denial of the grievance on June 15, 2006. In response, MOSES claimed arbitration. Hearings began on January 23, 2007, on the following agreed-upon issues:

> "Did the Massachusetts Highway Department violate Article 16 of the Collective Bargaining Agreement with regard to Paul Kelly? If so, what shall be the remedy?"

During arbitration, MOSES argued, as it had throughout the grievance process, that Kelly's grievance was "of a continuing nature," and presented evidence regarding multiple instances of Kelly's out-of-title work during the fourteen years from April, 1991, through April, 2005. In response, MHD claimed for the first time since the process began that there was no continuing grievance. Instead, MHD asserted, the deadlines for filing grievances contained in the agreement meant that Kelly's grievance was restricted to the period from the time the grievance was filed until the time the arbitrator found that Kelly first returned to performing work within his pay grade. At that point, MHD's argument continued, the grievance clock was reset and claims

---

[2]MOSES phrased the desired remedy as follows: "Compensate grievant for the difference in salary between Civil Engineer I and Civil Engineer III for the period commencing April 27, 1991 and ending upon the resumption of the duties of a Civil Engineer I. All lesser included remedies are incorporated herein." It used the same language to describe the desired remedy at steps two and three.

arising out of any further out-of-title work had to be the subject of a separate grievance.[3]

The arbitrator rejected some of Kelly's out-of-title claims but did find that he worked in a higher classification on numerous occasions during the period between 1991 and 2005. The arbitrator also rejected MHD's claim that the grievance period ended as soon as Kelly resumed performance of work the agreement assigned to employees at his pay level. As a result, the arbitrator awarded Kelly compensation at the higher levels for each of the occasions on which he worked out of grade, less the amount he had actually been paid.

MHD moved to vacate the award in the Superior Court pursuant to G. L. c. 150C, § 11, arguing that the arbitrator's award exceeded his authority because it ignored the agreement's deadline for filing separate grievances and appeals. MOSES moved to confirm the award. After a hearing, a Superior Court judge agreed with MHD and ruled that the arbitrator exceeded his authority by finding that "the separate and distinct filing of a grievance for each period of time was not necessary."[4] The judge vacated the arbitrator's award except for the period between October 2, 1995, and April 15, 1997, during which MHD conceded that Kelly had been working out-of-title and for which his grievance was timely.

The case involving Winters followed a similar path. He, too, began employment as a CE-I. MOSES filed a grievance on his behalf on September 12, 1997, alleging that he had been working as a CE-II since August, 1995.[5] Again MOSES lost at the first two steps and appealed to HRD on September 23, 1998.

---

[3]MHD also argued that the deadlines for filing separate grievances had expired by the time arbitration proceedings began and, therefore, no additional claims by Kelly were possible.

[4]The judge also concluded that the arbitrator committed an error of law because the record did not support his finding that the parties had agreed to treat the dispute as one of a continuing nature. Error of law, however, is not a ground on which a court may vacate an arbitration award. See *School Comm. of Pittsfield* v. *United Educators of Pittsfield*, 438 Mass. 753, 758 (2003); *Boston Hous. Authy.* v. *National Conference of Firemen & Oilers, Local 3*, 458 Mass. 155, 161 (2010); *Boston* v. *Salaried Employees of N. Am., Local 9158*, 77 Mass. App. Ct. 785, 788 (2010).

[5]The grievance stated that Winters "has been performing the duties and responsibilities of a Civil Engineer II since August 1995 without appropriate

HRD never responded. On March 7, 2006, eight years after taking the appeal to HRD, MOSES filed for arbitration. Arbitration proceedings commenced on June 20, 2006, after the parties agreed that the arbitrator would answer the following questions:

> "Did the Grievant work out of classification for the grievance period May 12, 1997 to April 2, 2004? If so, what shall be the remedy?"

The arbitrator found that Winters "worked out of classification for the periods April 16 to August 15, 2001 and April 29, 2002 to April 2, 2004,"[6] and ordered MHD to pay him accordingly.[7] At that point, MHD moved to vacate the arbitrator's award in the Superior Court, claiming, as it had during the arbitration proceedings, that the arbitrator had ignored filing deadlines the agreement contained. In the Superior Court, the case came before the same judge who decided Kelly's case. He ruled that, in making the award to Winters, the arbitrator impermissibly "modified the plain language" of the agreement insofar as filing deadlines were concerned and, in the process, "went beyond what [G. L. c.] 150C and Article 23A ever contemplated, namely the filing of a grievance some three and one-half years before a violation which is the subject of the grievance." Accordingly, the judge vacated the award in its entirety.

*Discussion.* In their briefs and arguments, the parties have focused, as they did during the arbitration proceedings and in Superior Court, on the contractual language governing deadlines for filing grievances and on whether the arbitrators' application of that language was a permissible exercise of their extensive powers. Those powers are broad indeed. "When parties agree to arbitrate a dispute, courts accord their election great weight.

---

compensation in violation of the collective bargaining agreement." The desired remedy sought compensation "for the difference in salary between a Civil Engineer II and a Civil Engineer I commencing August 1995 until he resumes performing the duties and responsibilities of a Civil Engineer I. All lesser included remedies are incorporated herein." The same language was used at steps two and three.

[6]Winters resigned from MHD in April, 2004.

[7]The order for back pay was somewhat more complex than the order entered in Kelly's case, but the complexities play no role in this appeal, and as a consequence, we need not describe them.

The strong public policy favoring arbitration requires us to uphold an arbitrator's decision even where it is wrong on the facts or the law, and whether it is wise or foolish, clear or ambiguous." *Boston* v. *Boston Police Patrolmen's Assn.*, 443 Mass. 813, 818 (2005). See *Boston* v. *Salaried Employees of N. Am., Local 9158*, 77 Mass. App. Ct. 785, 788 (2010).

Though broad, the powers are not boundless. An award may be vacated if the arbitrator "exceeds his authority by granting relief beyond the scope of the agreement, . . . by awarding relief beyond that to which the parties bound themselves, . . . or by awarding relief prohibited by law." *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990). See G. L. c. 150C, § 11(*a*)(3). However, as long as the award does not cross those boundaries and is not the product of the arbitrator's own "idiosyncratic brand of workplace justice," the award will be upheld for, in the end, it is "the arbitrator's interpretation of the bargained-for language that the [parties] . . . agreed to accept, not the interpretation by a court acting upon a subsequent application under G. L. c. 150C, § 11." *Sheriff of Suffolk County* v. *AFSCME Council 93, Local 419*, 68 Mass. App. Ct. 222, 226-227 (2007).

In pressing their different views of how the underlying principles apply to these appeals, the parties have downplayed a consideration we think is entitled to greater emphasis. In evaluating the propriety of an arbitrator's award, the court is required to consider not only the language of the agreement but also the question the parties tendered to the arbitrator for resolution, for that question plays a critical role in determining the scope of the arbitrator's authority. See *Reading* v. *Reading Patrolmen's Assn., Local 191*, 50 Mass. App. Ct. 468, 470 (2000), quoting from *School Comm. of Waltham* v. *Waltham Educators Assn.*, 398 Mass. 703, 705-706 (1986) ("Absent fraud, illegality in the award, or procedural defect . . . a 'court's inquiry is confined to the question whether the arbitrator exceeded the scope of [his] reference or awarded relief in excess of [his] authority' "); *Duxbury* v. *Rossi*, 69 Mass. App. Ct. 59, 62 (2007) ("In the present case, . . . the parties clearly authorized the arbitrator to rule on whether the town 'properly [denied a police officer] . . . benefits,' and to determine a remedy in the event he

concluded that such benefits had been unlawfully withheld. The applicable [collective bargaining agreement] provided for arbitration of a dispute of this nature, and the parties submitted the question to the arbitrator for resolution").

Here, the questions submitted to the arbitrators were clear and unencumbered. In Kelly's case, the arbitrator was asked to determine whether the "Massachusetts Highway Department violate[d] Article 16 of the Collective Bargaining Agreement with regard to Paul Kelly?" With respect to Winters, the question was "[d]id the Grievant work out of classification for the grievance period May 12, 1997 to April 2, 2004?"[8] Both questions involved "dispute[s] concerning the application or interpretation of the terms of" the agreement and, thus, fell squarely within the scope of the agreement's grievance provisions. Beyond the grievance period specified in the question presented in Winters's case, neither submission compartmentalized work periods or mentioned filing deadlines. On the contrary, the broad form the parties gave those questions did not address issues about time limits or other procedural constraints and focused instead on the merits of the parties' pay disputes.

Moreover, those questions were consistent with the form the disputes had taken from the outset. From the beginning, both grievances were open-ended. Kelly alleged that he had been "performing the duties of Civil Engineer III since April 27, 1991 while being compensated as a Civil Engineer I in violation of Article 16." As a remedy, he sought "the difference in salary between Civil Engineer I and Civil Engineer III for the period commencing April 27, 1991 and ending upon the resumption of the duties of a Civil Engineer I. All lesser included remedies are incorporated herein." Winters's initial grievance and his appeals took a similar open-ended form. Indeed, even if

---

[8]MHD argues that the question required a "yes" or "no" answer and did not permit the arbitrator to make an award for various components of that seven-year period. The record does not suggest that that claim was made below, and thus, it has been waived. See *Carey* v. *New England Organ Bank*, 446 Mass. 270, 285 (2006). Were we to consider it substantively, though, we think that the arbitrator was not required to adopt such a crabbed view of the question's scope. Among other things, MHD's approach would mean that the arbitrator would have had to deny Winters's claim if he found that Winters worked as a CE-I for only one day out of the seven years. No reasonable interpretation of the question would produce that kind of result.

one could somehow find ambiguity in the scope of the submission in Kelly's case, the submission in Winters's removed that ambiguity by expressly defining the "grievance period" as spanning the seven years from 1997 to 2004.

At the very least, then, those submissions, when considered in the context in which the arbitration proceedings began, provided a foundation for the arbitrators to conclude, as they did, that otherwise applicable time limits did not prevent them from reaching the merits of the continuing violation claims Kelly and Winters tendered. The demands for arbitration came years after the initial grievances were filed. From the very beginning, the disputes focused on continuing, or at least repeated, practices. Not once during all of the years before arbitration that grievances were pending had the MHD asserted or suggested that the disputes were not continuing in nature. "Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum," *Massachusetts Hy. Dept.* v. *Perini Corp.*, 444 Mass. 366, 377 (2005), quoting from *John Wiley & Sons* v. *Livingston*, 376 U.S. 543, 556-557 (1964), and it is the arbitrator's function to decide those questions. *Id.* at 375-376. Nothing in the contract or in any applicable statute prohibited the parties from submitting to arbitration a question that took account of events that had occurred during the many years since the initial grievances were filed. Given the context in which the disputes reached them and the scope of the arbitration on which the parties agreed, the arbitrators' awards did not exceed their powers.

The judgments of the Superior Court are vacated, and the cases are remanded to that court for entry of new judgments confirming the arbitrators' awards.

*So ordered.*