Gordon, RobertB., J.
This case comes to the Court following a labor arbitration award issued in favor of a public employee union representing firefighters (the “Union”) employed by the Fire Department of the City of Newton (the “City”). Presented for decision are cross motions, dispositive in nature. The Union seeks to confirm the Arbitrator’s Award in accordance with G.L.c. 150C, Sec. 10. The City seeks to vacate the Award in accordance with G.L.c. 150C, Sec. 11(a)(3). Central to the resolution of these motions are the related questions of whether the Arbitrator who decided the underlying grievance exceeded his contractual authority under the governing Collective Bargaining Agreement, and whether the Arbitrator’s ordered remedy offends Massachusetts law or public policy. Inasmuch as the parties’ pleadings reveal that the facts of this matter are in all relevant particulars undisputed, the Court finds that disposition of the action by the present cross motions is appropriate.
BACKGROUND FACTS
The City and the Union are parties to a Collective Bargaining Agreement (the “Agreement”) prescribing the terms and conditions of employment for municipal firefighters represented by IAF Local 683. Section 18.03 of the Agreement provides for, among other things, the allocation of overtime “on an equitable basis,” with actual assignments distributed to firefighters and officers based on an “overtime list.” To reduce the amount of management calls required to fill the Fire Department’s overtime needs, the parties established a “stand-by list” populated with the names of employees who (on a daily basis) notify the Department of their availability to work beyond their scheduled shifts. Overtime is assigned to these volunteers based on their relative amount of overtime worked to date, with the employee who has worked the least amount of overtime afforded the highest place on the stand-by list. Employees who place themselves on the stand-by list are not thereby obligated to accept any particular overtime assignment, but the City is obligated to extend them the opportunity for such premium-paid work in the order of their position on the list.
On August 27, 2012, Deputy Chief William Carvelli was the Fire Department manager responsible for the stand-by list controlling overtime distribution. In accordance with prevailing practice, Deputy Chief Carvelli delegated the task of creating and administering the daily list to Firefighter Pasquale Caruso, a member of the Union’s bargaining unit. On this particular occasion, Captain William Bianco occupied the position on the stand-by list entitling him to the next overtime opportunity, owing to the fact that he had *202 worked the fewest number of overtime shifts to. date. An unexplained error by Caruso, however, resulted in Captain Bianco being bypassed and the overtime opportunity instead extended to an employee who had already worked more overtime hours. That employee accepted the overtime assignment, and the City-— alerted to the error — sought on its own initiative to remediate the contract violation by placing Bianco’s name at the top of the stand-by list for the next available overtime assignment.
Significantly, the City did not secure the Union’s concurrence with its chosen method of rectifying the error of having denied Bianco the overtime opportunity to which he was entitled. It simply assumed that restoring Bianco to a priority position on the stand-by list — assuring him the next available assignment if he wanted it — would suffice. In what the City now asserts to be a good deed not going unpunished, the Union did not agree, and proceeded to file a grievance on behalf of Captain Bianco.[1]
In the arbitration that followed, the parties did not dispute that the City had violated the Agreement’s overtime provision. That remains the case. Both sides stipulated that Captain Bianco should have been offered an overtime opportunity that was in fact extended to a different employee in the Fire Department who had worked more overtime hours than he as of August 27, 2012. Rather, the sole issue presented to the Arbitrator concerned the appropriate remedy for the contract violation. The Union’s position was that Bianco was entitled to be “made whole” — that is, paid the amount of compensation he would have earned had he worked the overtime shift that was improperly denied him on August 27th. For its part, the City argued that, by placing Bianco at the head of the stand-by list, the City had already made the grievant whole. Awarding a back pay remedy on top of this would yield Bianco an unearned and undeserved windfall, a particularly inappropriate result in light of the fact that there was no assurance (beyond speculation) that Bianco would have accepted this overtime assignment had it been tendered to him.
Following a one-day hearing and briefing by the parties, the Arbitrator (Michael W. Stutz) found in favor of the Union and issued an Award that directed the Ciiy to make Captain Bianco whole with the “back pay that he could have earned but for the City’s breach of the Agreement.” The Award follows a 13-page decision in which the Arbitrator addresses both the pertinent provisions of the Agreement and the broader interests of fairness when fashioning remedies for contract violations. The City promptly paid the ordered back-pay overtime, and then initiated the present suit. Reciprocal dispositive motions — one to vacate the Award and the other to confirm it — are now before the Court.
DISCUSSION Standard of Review
The standard for judicial review of a public sector labor arbitration award is well settled under Chapter 150C. A strong public policy in Massachusetts favors the finalily and certainty of resolving labor disputes by binding arbitration. See, e.g., School District of Beverly v. Geller, 435 Mass. 223, 228 (2001) (“narrow scope of judicial review reflects a strong public policy favoring arbitration”); Mass. Highway Dep’t. v. AFSCME, 420 Mass. 13, 16 (1995) (similar). “Absent fraud, errors of law or fact are not sufficient grounds to set aside an award.” Plymouth-Carver Regional School District v. J. Farmer & Co., 407 Mass. 1006, 1007 (1990); City of Lynn v. Thompson, 435 Mass. 54, 61 (2001) (same). “Even a grossly erroneous [arbitration] decision is binding in the absence of fraud.” Trustees of Boston & Me. Corp. v. MBTA, 363 Mass. 386, 390 (1973). “An arbitrator’s result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet, it may not be subject to court interference.” City of Lynn, supra (citation and quotation omitted); accord City of Boston v. Boston Police Patrolmen’s Ass’n, 443 Mass. 813, 818 (2005) (“strong public policy favoring arbitration requires us to uphold an arbitrator’s decision even where it is wrong on the facts or the law, and whether it is wise or foolish, clear or ambiguous”).
The above-described deference to the results of arbitration acknowledged, and barring demonstrated fraud, corruption or partiality, this Court may vacate an arbitral award if the arbitrator either (a) exceeded his authority under the governing collective bargaining agreement, or (b) rendered an award requiring a party to violate state or federal law. See G.L.c. 150C, Sec. 11(a)(3). Only if an arbitrator has thus acted “beyond the scope of authority conveyed to him” may his award be set aside by judicial action. Sheriff of Suffolk County v. AFSCME Council 93, 67 Mass.App.Ct. 702, 706 (2006).
The City’s Challenge to the Arbitrator’s Award
In the case at bar, the City labors to shoehorn its criticisms of Arbitrator Stutz’s make-whole remedy into the cramped confines of judicial review authorized by Chapter 150C, Sec. 11(a)(3). Conceding that the Arbitrator’s Award was not the product of corruption, fraud, duress, partiality or other misconduct, the City argues that the award of back-overtime to Captain Bianco both exceeded the Arbitrator’s authority under the Agreement and called upon the City to violate state law. These arguments are addressed in turn.
The City first maintains that, inasmuch as the Agreement requires overtime to be distributed “on an equitable basis,” the Arbitrator exceeded his authority under the contract by ordering back-overtime to be paid to an officer whose loss had already been fully rectified by virtue of his being placed at the top of the stand-by list for the next available overtime assign *203 ment. Bianco having thus previously received compensatory make-up overtime in this way, the argument goes, the Arbitrator’s order yielded him an unearned windfall — a double-recovery that cannot be squared with the contractual dictate that overtime be awarded on an “equitable” basis.[2] The Court does not agree. Prescinding the fact that the position urged by the City represents, at its core, a quarrel with the Arbitrator’s construction of the Agreement’s requirement that overtime be distributed “equitably” — a merits-based matter of contract interpretation not properly second-guessed by this Court — a review of the Award itself finds it to be an altogether fair and reasonable decision.
The parties having effectively stipulated to a contract violation, the Arbitrator here undertook to do what all neutrals do when fashioning a remedy — viz., restore the wronged employee to the position he would have been in had the City fulfilled its obligation under the Agreement. Inasmuch as Arbitrator Stutz could not reverse the course of time to allow Captain Bianco to work the actual overtime shift to which he had been entitled, he ordered the City to provide him with the financial equivalent. It is well settled that arbitrators enjoy broad discretion to fix remedies for contract violations committed to their jurisdiction, see City of Lynn v. Council 93, AFSCME, 51 Mass.App.Ct. 905, 906 (2001); and, here, Arbitrator Stutz chose to remedy the violation presented to him with an award of the back-overtime that Bianco would have earned had the stand-by assignment process been properly followed. This, of course, is the canonical remedy for labor contract violations, and its award hardly exceeded the Arbitrator’s authority under the Agreement.
The City’s windfall argument, in all of its rhetorical variations, has two prongs to it. First, it decries the fact that Captain Bianco was awarded overtime without actually having to work a shift to earn it. Second, it argues that Bianco was already fully compensated with overtime collected by reason of his retention at the top of the stand-by list. As to the first prong, the Court would simply point out that this so-called “windfall” is an inherency in the back pay remedy itself. Employees who receive back pay for work assignments improperly withheld from them are never required to “earn” such a remedy through work; and employers having to “pay twice” for the same labor (to the employee who did the work and then again to the employee who should have been allowed to do it) has long been recognized as the appropriate price to pay for a breach in such circumstances.[3] This is not a windfall, but instead the broadly accepted remedy for wronged employees that has prevailed under the National Labor Relations Act, Title VII, Mass. G.L.c. 151B, and arbitral precedents dating back many decades.
As for Captain Bianco’s re-placement on the overtime stand-by list, the City appears to be arguing that overtime thereby earned on a different shift should be deemed to have mitigated this employee’s loss to zero. The Arbitrator, however, supportably found otherwise. Bianco was entitled to the wages he would have earned on a particular shift on a specific day, recognizing that the actual overtime hours worked may vary from one occasion to the next. Working a different shift on some subsequent date would not assure Bianco the same number of compensated hours he was denied; and it would obviously not compensate him for the time value of money he would have enjoyed had he been paid overtime for the particular shift hours to which he was entitled. So noting that the City’s make-up assignment had yielded “pretty close” but not full relief for the grievant, Arbitrator Stutz ordered that Bianco be made whole with a payment of the overtime he would have received had the City not breached the Agreement. This cannot be said to have exceeded his contractual authority.
It is, perhaps, true that the employee here ended up in a modestly better place economically than he would have occupied had the City not violated the Agreement in the first place. This, however, is not a reflection of an arbitral remedy that exceeded the Arbitrator’s authority, but rather a function of the City’s unilateral decision to retain Captain Bianco at the top of the stand-by list. The City could have negotiated a resolution of the Bianco grievance by offering to provide him with the next available overtime shift, together with payment for any differential in the hours worked plus interest assessed from August 27, 2012 forward. In the alternative, it could have offered to preserve Bianco’s place on the stand-by list until such time as he worked the same or more overtime hours than those worked by the employee who jumped his place in line on August 27th. Either approach would have provided a true make-whole award, and it is difficult to conceive how the Union (or the Arbitrator, for that matter) could have concluded otherwise. A mutually agreed-upon settlement along these lines— the kind of accord that employers and unions strike all the time in their collaborative resolution of workplace issues — would obviously have avoided the need for arbitration altogether. But the City’s unilateral decision to retain Bianco at the top of the overtime stand-by list was not, and cannot be, regarded as the equivalent, divesting this employee of his right to a full remedy. The City’s protest that Bianco has thereby been unjustly enriched is, in these circumstances, a ciy from a self-inflicted wound. The Arbitrator was well within his authority to reject it.[4]
The City next argues that the Arbitrator erred in awarding remedy for a contract violation that occurred without “intentional action” on the part of the employer. Relatedly, the City insists that the violation which occurred in this case was the product of an administrative error committed by a member of the Union’s bargaining unit, and thus cannot fairly be *204 ascribed to the City as a matter of vicarious liability.:-: These arguments will not long detain the Court. Once ” again, the City has posited putative errors of fact-find-:; ing and legal reasoning by the Arbitrator that do not: lie within the province of a reviewing Court to remedy. See City of Boston v. Boston Police Patrolmen's Ass'n, 443 Mass. 813, 818 (2005). Even considered on their merits, however, the arguments lack force. Nothing in the Agreement, law or common sense requires that contract breaches be “intentional” as a condition to the awarding of a remedy for same. In reading such a requirement into the Agreement where none exists, the City commits the very wrong of which it now accuses the Arbitrator. Likewise, the fact that the City delegated ministerial administration of the overtime stand-by list to an employee in the Union’s bargaining unit does not, perforce, relieve it of ultimate responsibiliiy for complying with Section 18.03 of the contract. The Chief of the Fire Department evidently acknowledged as much during the arbitral hearing, and Arbitrator Stutz reasonably so found. The breach remedy assessed against the City suffers no legal defect in this regard.
The City’s assertion that an award of back-overtime to Captain Bianco in this case was impermissibly “speculative” likewise fails to persuade. It is true enough that Bianco’s position on the August 27 standby list entitled him to no more than the opportunity to work overtime, and that the opportunity so extended was one he had eveiy right to decline. That, however, as the Arbitrator reasonably concluded, does not render a monetary remedy for the denial of this due opportunity speculative. The Arbitrator found that Captain Bianco had placed himself on the overtime availability list, the sole precondition to being awarded overtime hours under the Agreement. By withholding from him the overtime opportunity that he was contractually due, the City deprived the grievant of a benefit of employment that he had every right to pursue in arbitration. To deny Bianco remedy in these circumstances — based on the supposition that he might have spurned the very opportunity whose deprivation he had grieved in the first place — would be a perversion of justice.[5] Perhaps more to the point, it would exalt (as grounds for decision) precisely the sort of speculation the City decries in its present challenge to the Award.
Finally, the City advances the argument that the arbitral award rendered in this case should be vacated because, in necessitating an unbudgeted expenditure of overtime compensation to an employee who did not actually work the hours, the remedy compelled a violation of G.L.c. 44, Sec. 31. The argument is unconvincing. Chapter 44, Section 31 of the General Laws provides in relevant part as follows: “No department financed by municipal revenue, or in whole or in part by taxation, of any city or town, except Boston, shall incur a liability in excess of the appropriation made for the use of such department . . .’’In the present case, the Court believes it is specious to argue that the Arbitrator’s award of a single shift of overtime compensation to a single employee has somehow forced the City to surcharge the operating funds budgeted for its Fire Department. Indeed, it bears noting that the City has already in fact disbursed the ordered overtime payment to Captain Bianco, with no evident adverse consequence to its Fire Department’s capacity to protect Newton residents.
CONCLUSION AND ORDER
At the end of the day, the City’s myriad challenges to the arbitral award rendered in this case represent an effort to relitigate the merits of the Arbitrator’s chosen remedy for an acknowledged contract violation. However, inasmuch as the record makes clear that the Award neither exceeded the Arbitrator’s contractual authority nor violated state law, it is beyond the reach of this Court’s review under Chapter 150C to disturb it on the basis of claimed errors in the inteipretation of the Agreement. See, e.g., Concerned Minority Educators of Worcester v. School Committee of Worcester, 392 Mass. 184, 187 (1984) (“We do not, and cannot, pass on an arbitrator’s alleged errors of law and, absent fraud, we have no business overruling an arbitrator because we give a contract a different interpretation”); City of Lynn v. Council 93, AFSCME, 51 Mass.App.Ct. 905, 906 (2001) (“Given that the issue of remedy was arbitrable, the merits of the remedy chosen by the arbitrator are beyond the scope of judicial review absent grounds for vacation under G.L.c. 150C, Sec. 11”).
The Ciiy has mounted a vigorous set of challenges to the Arbitrator’s remedial order in this case; but these challenges ultimately reduce to variations of the singular argument that Arbitrator Stutz “got it wrong” when he permitted Captain Bianco to recover back pay even after the City had already provided him with a make-up opportuniiy for the lost overtime. The Appeals Court has previously addressed this precise argument in closely parallel circumstances, and its words apply in full measure here:
The judge essentially ruled that the arbitrator’s interpretation was erroneous. In short, the arbitrator may simply have got it •wrong. The sheriffs argument, therefore, boils down to a claim that the arbitrator exceeded his authority by erroneously interpreting the contract provision. If that were the test for vacating an arbitration award, G.L.c. 150C, Section 11... would be drained of any meaning, so that any and all awards would be vulnerable to attack, merely on a complaint by a party who claims error on the part of an arbitrator in interpreting the particular contract language at hand. The settled rule, however, is that a court has no business overriding an arbitrator because it gives a contract a different interpretation.
Sheriff of Suffolk County v. AFSCME Council 93, 68 Mass.App.Ct. 222, 227 (2007) (quotations omitted).
*205 Accordingly, and for the reasons set forth herein-above, Plaintiffs Motion for Judgment on the Pleadings is DENIED. Defendant’s Cross Motion to Confirm Labor Arbitration Award is ALLOWED. No costs or attorneys fees are assessed against either party.

The City may have inferred that the Union was acquiescing in its approach to the Bianco matter from the fact that no grievance was filed on behalf of the next-in-line firefighter on the stand-by list whose overtime assignment was thereby delayed a shift.

The contention that the grievant in this case received a windfall because he had already been made whole with overtime earned by reason of his re-placement at the top of the stand-by list is one that the City repeatedly advances throughout its Memorandum — albeit dressed in slightly varying legal rhetoric. The Award is thus alternately characterized as a transgression of the Arbitrator’s remedial authority under the Agreement, a violation of the Massachusetts common law of contract remedy, and an offense against public policy. Because each of these arguments sources to the same root contention, and in the interest of economy, the Court will herein address such arguments as one.

If the penalty for robbing a bank were simply an obligation to give back the money if and when caught, many would choose to rob banks for a living. So, too, if an employer’s only remedy for denying an employee a due benefit is to provide such employee the improperly withheld benefit at next opportunity.

The City might understandably feel that the Arbitrator should at least have taken the matter of Bianco’s mitigated overtime into consideration when fashioning his remedy, and awarded only any hours differential and interest necessary to produce true make-whole relief. The City, however, does not appear to have guided Arbitrator Stutz to this sensible result, and instead argued (as it does before the Court) that Bianco was entitled to nothing. Thus, while the Arbitrator’s Award in this case does have something of the feel of “Gotcha,” the City is not without its share of responsibility for this outcome. In all events, it is not for the Court to reformulate an arbitral award merely because it would have structured its remedy differently had the grievance been its to decide in the first instance. See supra.

By analogy, job applicants who demonstrate that they were discriminatorily denied positions of employment (in violation ofTitle VII or Chapter 151B, for example) are entitled to a back pay remedy, notwithstanding the theoretical possibilfiy that they might in fact have rejected the job offer had it been extended to them. The same logic applies in the present case.