NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-266

CITY OF HOLYOKE

vs.

IPBO LOCAL 388 & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The city of Holyoke (city) appeals from a Superior Court judgment on the pleadings, which confirmed an arbitration award in favor of IPBO Local 388 (union) and Eliezer Garcia (Garcia). On appeal, the city claims that the arbitrator exceeded the scope of her authority, and that she ignored or failed to apply the unambiguous language of the collective bargaining agreement (CBA) between the city and the union regarding the payment of "injured on duty" (IOD) benefits under G. L. c. 41, § 111F, to Garcia. We affirm.

"A matter submitted to arbitration is subject to a very narrow scope of review." School Comm. of Hanover v. Hanover Teachers Ass'n, 435 Mass. 736, 740 (2002), quoting Plymouth-

---

[1] Eliezer Garcia.

Carver Regional Sch. Dist. v. J. Farmer & Co., 407 Mass. 1006, 1007 (1990). "Courts inquire into an arbitration award only to determine if the arbitrator has exceeded the scope of [her] authority, or decided the matter based on 'fraud, arbitrary conduct, or procedural irregularity in the hearings.'" School Comm. of Hanover, supra, quoting Plymouth-Carver Regional Sch. Dist., supra. See G. L. c. 150C, § 11 (a) (3). "An arbitrator exceeds [her] authority by granting relief beyond the scope of the arbitration agreement . . . by awarding relief beyond that to which the parties bound themselves . . . or by awarding relief prohibited by law." School Comm. of Hanover, supra, quoting Plymouth-Carver Regional Sch. Dist., supra.

Here, the question before the arbitrator was whether the city violated the CBA, which incorporated the provisions of G. L. c. 41, § 111F, when it terminated Garcia's IOD benefits. Section 111F permits termination of such benefits only on a determination that the incapacity no longer exists (it appears undisputed that Garcia remains incapacitated), or when the officer is retired or pensioned. Nothing in the CBA permitted termination of those benefits in a manner inconsistent with the statute.

The city, after a period of IOD benefit payments, filed an application to have Garcia retired under G. L. c. 32, § 16 (involuntary accidental disability retirement). However,

because Garcia previously withdrew his accumulated retirement deductions, he was not eligible for retirement under § 16 until he repaid his withdrawn contributions with interest. See G. L. c. 32, § 3 (6) (c). Because Garcia did not have the means to repay the funds, he could not be "retired or pensioned," and, in accordance with the CBA, the city could not cease IOD benefits. Thus, the arbitrator determined that the city violated the CBA and ordered it to immediately reinstate Garcia's IOD status and benefits, make Garcia whole for all compensation and benefits lost due to the wrongful termination thereof, and pay him interest on all compensation owed. The Superior Court judge confirmed the arbitrator's order.

On appeal, the city claims that the arbitrator exceeded the scope of her authority by effectively ordering the city to pay IOD benefits for a permanent injury, in contravention of G. L. c. 41, § 111F, and a provision of the CBA indicating the city is not obligated to pay § 111F benefits for permanent injuries ("Each injury shall have a shelf life and should not be construed as a permanent injury with an indefinite period of disability"). The city also argues that, given the CBA language, the arbitrator lacked authority to require it to pay IOD benefits for an indefinite period of time.

The CBA's paragraph 19.4(f) provides that an arbitrator has authority to review and apply the "terms and provisions" of the

3

CBA. The CBA incorporated and specifically included G. L. c. 41, § 111F, into the "terms and provisions" of their contract in paragraph 11.2, which states, "Injuries and/or illnesses sustained in the performance of duty shall be handled in accordance with [G. L. c. 41, § 111F], except as specified in [the CBA]." These provisions put within the scope of the arbitrator's authority the ability to review and apply § 111F.

The city claimed that it did not violate the CBA because it was not required to pay IOD benefits indefinitely because paragraph 11.2 states that "[e]ach injury shall have a shelf life and should not be construed as a permanent injury with an indefinite period of disability." In her construction of § 111F and the CBA, the arbitrator rejected this claim because there was no support to the city's claim that after some period of time it can terminate the benefits of an officer who became disabled while on duty, unless the officer has been retired, pensioned, or no longer suffers from his disability. See G. L. c. 41, § 111F.

The arbitrator further determined that under paragraphs 11.2 and 11.3, the city had to continue Garcia's IOD status and benefits unless and until Garcia is cleared by the city's physician to return to duty or light duty. Importantly, under 11.6, if an independent physician clears an officer for light duty, "such light duty shall be effective immediately, or if no

4

light duty tasks are indicated, the officer shall continue to be carried on [IOD] status" (emphasis added). There is no exception in the CBA or § 111F that permits the city to terminate benefits when a disabled officer has not repaid pension payments that were previously withdrawn.

The arbitrator was given the authority to apply the language of the CBA, which included G. L. c. 41, § 111F. She did not act beyond the scope of that authority. Her interpretation differs from the city's, and even if we accepted the city's argument that the arbitrator's view was incorrect, the question of contract interpretation is ultimately not one for our resolution. See Boston v. Professional Staff Ass'n, 61 Mass. App. Ct. 105, 112 (2004) (courts have "no business overruling an arbitrator because [they] give a contract a different interpretation"). "It was the arbitrator's interpretation of the bargained-for language that the [city] and the union had agreed to accept, not the interpretation by a court acting upon a subsequent application under G. L. c. 150C, § 11." Sheriff of Suffolk County v. AFSCME Council 93, Local

419, 68 Mass. App. Ct. 222, 226 (2007).

Judgment affirmed.

By the Court (Vuono, Meade & Walsh, JJ.[2]),

Joseph F. Stanton

Clerk

Entered:   November 14, 2023.

---

[2] The panelists are listed in order of seniority.